Charles W. **TERRELL** and Karen Terrell, Plaintiffs,

v.

John H. **CHILDERS**, Michael Childers, Frank Schuette, Jr., Joann Childers, Elwood Kreger, Talent Services, Inc., an Illinois corporation, and Bercoon, Weiner, Glick & Brook, an Illinois corporation, Defendants.

No. 93 C 2460.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 25, 1996.

---

Gary Lee Starkman, Brian Alan Sher, Ross & Hardies, P.C., Chicago, IL, for plaintiffs.

Robert K. Blain, Law Offices of Robert K. Blain, Chicago, IL, for John H. Childers, Michael J. Childers, Frank Schutte, Jr., Talent Services, Inc., Joann Childers.

George William Spellmire, David Matthew Schultz, Hinshaw & Culbertson, Chicago, IL, for Elwood Kreger, Bercoon, Weiner, Glick, and Brook.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, Chief Judge:

Plaintiffs Charles and Karen Terrell bring this action against their former financial management company, Talent Services, Inc., and several of its executives and agents, John ("Jack") Childers, Michael Childers, Frank Schuette, and JoAnn Childers (the TSI Defendants), and against the Terrells' former accounting firm, Bercoon, Weiner, Glick & Brook, and one of its partners, Elwood Kreger (the Kreger Defendants). The twelve-count complaint seeks recovery under various state and federal causes of action. Presently before the court are two summary judgment motions filed by the Kreger Defendants, and one summary judgment motion filed by Jack and JoAnn Childers. For the reasons set forth below, we grant in part and deny in part the Kreger Defendants' motions for summary judgment, and deny Jack and JoAnn's motions for summary judgment.

### I. Background

Charles W. Terrell ("Walt") began playing professional baseball in 1980. In December 1985, a few years after breaking into the major leagues as a starting pitcher, Walt entered into a Business Management Agreement with TSI. Generally, the Agreement called for TSI to manage Walt's financial affairs, including bookkeeping services; budget advice and preparation; tax advice, planning, and return preparation; expense administration; and insurance and estate planning. In return, TSI received an annual fee equal to five percent of Walt's baseball salary. During the time Walt was a TSI client, Jack Childers was TSI's President, Michael Childers was an officer of TSI, and Frank Schuette was TSI's vice-president of operations; JoAnn Childers is Jack's wife. TSI retained Elwood Kreger, a partner at Bercoon, Weiner, Glick & Brook, to perform accounting services, prepare tax returns, and render tax advice and planning for the Terrells. Pls.' 12(N) ¶ 3, Appendix 256–57; Pls.' 12(N) Additional Statement of Facts ¶ 2, Appendix 5, 18.

By March 1991, the relationship had soured, and Walt informed Jack that the management agreement would not be renewed next year. According to the plaintiffs, from the start of the relationship, TSI misrepresented the plaintiffs' financial status by lacing annual reviews provided to the Terrells with accolades such as "super" and "utterly fantastic," when in fact TSI had mis-

managed their finances and defrauded the Terrells. Primarily, the plaintiffs point to four examples of mismanagement or fraud: (1) the purchase of a historic property in Philadelphia through a general partnership named 2134 Pine Street Associates; (2) the investment in Strata Energy Resources Diversified Oil and Gas Fund, a California limited partnership; (3) the purchase of a fixed annuity from Manufacturers' Life Insurance Company; and (4) repeated overpayment of federal income tax.[1] On April 23, 1993, the plaintiffs filed this suit against the TSI Defendants; on December 13, 1994, we granted leave to amend the complaint in order to add the Kreger Defendants. The Amended Complaint asserts twelve counts: (1) breach of contract by TSI; (2) breach of fiduciary duty by Michael, Jack, Schuette, Kreger, and their respective firms; (3) common law fraud by Jack, Michael, Schuette, and TSI; (4) common law fraud by the Kreger Defendants; (5) conspiracy to commit fraud by Jack, Michael, JoAnn, Schuette, and Kreger; (6) negligent misrepresentation by Jack, Michael, Schuette, and TSI; (7) negligent misrepresentation by Kreger and his firm; (8) a declaratory judgment for indemnity against Jack, Michael, Schuette, and TSI; (9) accounting malpractice by Kreger and his firm; (10) fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1–12; (11) racketeering activity in violation of a provision of the Racketeer Influenced and Corrupt Organizations chapter (RICO), 18 U.S.C. § 1962(c), against Jack, Michael, Schuette, and Kreger and his accounting firm; and (12) conspiracy to commit racketeering activity in violation of RICO, § 1962(d), against Jack, Michael, JoAnn, Schuette, and Kreger and his accounting firm.

Presently before this court are three motions for summary judgment: (1) the Kreger Defendants' motion arguing that the causes of action are untimely under the applicable statutes of repose and limitation, and that the evidence fails to show that the Kreger Defendants owed a fiduciary duty to the plaintiffs; (2) the Kreger Defendants' motion

arguing that Kreger did not "conduct or participate in the conduct of" TSI's affairs in violation of RICO, § 1962(c); and (3) Jack and JoAnn Childers' motion arguing that they had insufficient involvement with the plaintiffs to render them liable on any count. We address each motion in turn.

## II. Standard for Reviewing Motions for Summary Judgment

■ Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Kreger Defendants

### A. Statute of Repose

In their first summary judgment motion, the Kreger Defendants argue that the state common law claims directed at them are time-barred, at least in part, by the applicable statute of repose. In support, the Kreger Defendants point to the Illinois statute of repose, 735 ILCS 5/13–214.2(b), particularly applicable to actions against accountants:

(b) In no event shall such action be brought more than 5 years after the date

---

1. In a prior opinion, we provided greater detail regarding the transactions. *Terrell v. Childers*, 836 F.Supp. 468, 471–72 (N.D.Ill.1993).

on which occurred the act or omission alleged in such action to have been the cause of the injury to the person bringing such action against a public accountant. . . .

Although the Terrells filed this suit against the TSI Defendants on April 23, 1993, the plaintiffs did not bring suit against the Kreger Defendants until the Amended Complaint was filed on December 13, 1994. According to the Kreger Defendants, much of the alleged wrongdoing occurred prior to December 13, 1989, and thus the five-year statue of repose bars the common law claims at least insofar as the claims are grounded on the stale wrongdoing.[2]

A repose period " 'gives effect to a policy different from that advanced by a period of limitations; [the period of repose] is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge.' " *Cunningham v. Huffman*, 154 Ill.2d 398, 182 Ill.Dec. 18, 22, 609 N.E.2d 321, 325 (1993) (alteration in original) (quoting *Mega v. Holy Cross Hosp.*, 111 Ill.2d 416, 95 Ill.Dec. 812, 815, 490 N.E.2d 665, 668 (1986)).

In the instant case, the plaintiffs base their causes of action against the Kreger Defendants on several instances of nondisclosure; for the most part, these nondisclosures are connected with transactions that the TSI Defendants arranged for Walt. Under § 13-214.2(b), any "omissions" that occurred five years prior to suit are time-barred. It is not a simple matter, however, to determine whether there exists a genuine issue of material fact as to the time of the alleged omissions; although the Kreger Defendants point out the timing of the underlying transactions, Kreger Defs.' 12(M) ¶¶ 21–25, it is not necessarily true that Kreger contemporaneously became aware (or, for the claims grounded on the fiduciary duty of care and negligence, should have become aware) of the transactions. And the plaintiffs fail to respond to the statue of repose argument. From what we can garner from the Kreger Defendants' Local Rule 12(M) Statement and the evidence to which they cite, we can conclude that the allegedly wrongful omissions contained in Amended Complaint ¶¶ 100(a), (b), 118(a), (b), 148(a), (b), occurred prior to December 13, 1989, and that at least part of the omissions contained in Amended Complaint ¶¶ 100(h), (i), (j), 118(h), (i), (j), 148(h), (i), (j), are time-barred as well.

■ First, the Kreger Defendants' failures to disclose that JoAnn Childers twice received so-called "lease-up fees" paid by Pine Street Associates occurred prior to 1989. The fees were paid in 1986 and 1987, Kreger Defs.' 12(M) ¶ 21, and Kreger became aware of the fees in the course of preparing Pine Street's tax forms and JoAnn's tax returns in the following years, see Pls.' 12(N), Appendix. 169–71, 261–62; *id.* ¶ 22(e)(1). Accordingly, the statute of repose bars the plaintiffs' attempt to recover for the Kreger Defendants' nondisclosures of the "lease-up fees." Amended Compl. ¶¶ 100(a), 118(a), 148(a).

■ Next, the Kreger Defendants' failure to inform the plaintiffs that Pine Street Association was structured as a general partnership occurred prior to 1989. Pine Street's formative documents were executed in 1985 and 1986. Kreger Defs.' 12(M) ¶ 22. In 1986, Kreger began serving as Pine Street's accountant, and he became aware of the partnership agreement while preparing Pine Street's tax forms. Pls.' 12(N) Appendix. 163, 167. Thus, the nondisclosure of the plaintiffs' "potential exposure to liability" also occurred prior to 1989 and is time-barred. Amended Compl. ¶¶ 100(b), 118(b), 148(b).

■ Additionally, the statute of repose bars in part the Terrells' allegation that the Kreger Defendants failed to disclose that JoAnn deducted nearly $60,000 in office expenses on her 1985–1991 tax returns, when in fact she did not maintain an office. Amended Compl. ¶¶ 100(h), 118(h), 148(h). Kreger prepared JoAnn's 1985–1991 tax returns, Pls.' 12(N), Appendix 36–38, 158, and the undisputed evidence allows for the reasonable inference that, when preparing her taxes, Kreger was aware or should have been aware that JoAnn did not incur office

---

2. Surprisingly, the plaintiffs did not respond to the statute of repose argument, choosing instead to argue only that the statute of limitations does not time-bar the common law claims.

expenses, *id.* Appendix., 172, 182.[3] Accordingly, § 13–214.2(b) bars the plaintiffs' reliance on the nondisclosures that occurred prior to December 13, 1989 as grounds for recovery. Similarly, the statute of repose bars several of the Kreger Defendants' failures to inform Walt that he should decrease his W–2 tax withholdings in order to avoid overpaying federal and state taxes. Amended Compl. ¶¶ 100(i), (j), 118(i), (j), 148(i), (j). Those tax returns prepared prior to December 13, 1989 cannot constitute the basis for recovery. Thus, the allegations in Amended Compl. ¶¶ 100(h)–(j), 118(h)–(j), 148(h)–(j), are time-barred in part.

■ In sum, § 13–214.2(b) bars the plaintiffs' common law causes of action insofar as the claims are grounded on "act[s] or omission[s]" that occurred prior to December 13, 1989. Based on the parties' arguments and the evidence they place before us, we conclude that the statute of repose bars the allegations in Amended Compl. ¶¶ 100(a), (b), 118(a), (b), 148(a), (b), and bars in part the allegations in Amended Compl. ¶¶ 100(h)–(j), 118(h)–(j), 148(h)–(j).[4]

### B. Statute of Limitations

To the extent that the common law causes of action are not barred by the statute of repose, the Kreger Defendants contend that the statute of limitations particularly applicable to accountants bars the remaining common law claims:

(a) Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act … for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

**3.** In fact, JoAnn admits that she has not worked since 1958. Pls.' Additional Statement 12(N) ¶ 18(a); Kreger Defs.' Resp. to 12(N) ¶ 18(a).

**4.** As to the remainder of the "act[s] or omission[s]" upon which the plaintiffs' claims are grounded, there exists a genuine issue of material fact as to when the nondisclosures were committed, or in other words, when Kreger became aware or should have become aware of the un-

735 ILCS 5/13–214.2(a). According to the Kreger Defendants, the common law claims accrued in May 1991, when the Terrells hired a certified public accountant, Michael Sharpe, to audit the Terrells' financial status and evaluate TSI's management of their financial affairs; at the latest, the Kreger Defendants argue, the claims accrued on December 10, 1991, when Sharpe completed the audit and met with the Terrells and their attorney to review the report.

In response, the plaintiffs contend that, "[a]ccepting the hypothesis of the Kreger Defendants that the stated causes of action against them accrued in December 1991," Pls.' Resp. at 15, the Kreger Defendants fraudulently concealed the common law claims and thus the applicable limitations period is five years:

If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

735 ILCS 5/13–215.

■ Generally, fraudulent concealment applies where the defendant commits affirmative acts or makes representations designed to conceal the cause of action, *Chicago Park Dist. v. Kenroy, Inc.,* 78 Ill.2d 555, 37 Ill.Dec. 291, 294, 402 N.E.2d 181, 184 (1980), and the plaintiff exercises due diligence in discovering the cause of action, *Marvel Eng'g Co. v. Matson, Driscoll & D'Amico,* 150 Ill. App.3d 787, 103 Ill.Dec. 631, 636, 501 N.E.2d 948, 953 (1986). However, silence can constitute fraudulent concealment if the defendant owes a fiduciary duty to the plaintiff:

[A]s between persons sustaining a fiduciary or trust or other confidential rela-

derlying transactions and failed to disclose them. In support of their motion for summary judgment, the Kreger Defendants point only to evidence that establishes generally when the underlying transactions occurred, Kreger Defs.' 12(M) ¶¶ 23–25, rather than the relevant nondisclosure timing, and we thus cannot conclude that the statute of repose bars the allegations in Amended Compl. ¶¶ 100(c)–(b), 118(c)–(g), 148(c)–(g).

tionship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff ..., and that his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment.

*Kenroy,* 37 Ill.Dec. at 295, 402 N.E.2d at 185 (collecting cases and quoting 173 A.L.R. 576, 588 (1948)).[5] In addition, the fiduciary obligation is taken into account when determining whether the plaintiff exercised due diligence in uncovering the cause of action; to require the plaintiff to scrutinize his fiduciary for misconduct, "absent a prior indication of wrongdoing, would require [the plaintiff] to presume unfaithfulness on the part of [the plaintiff's] fiduciary." *Id.; cf. Hernandez v. Childers,* 736 F.Supp. 903, 909 (N.D.Ill.1990). The failure to discover the cause of action, however, must be due "to the trust and confidence placed in the fiduciary." *Hagney v. Lopeman,* 147 Ill.2d 458, 168 Ill.Dec. 829, 832, 590 N.E.2d 466, 469 (1992).

 In the instant case, we conclude that there exists a genuine issue of fact over whether Kreger owed a fiduciary duty to the plaintiffs, and if he was the plaintiffs' fiduciary, whether Kreger fraudulently concealed the cause of action by remaining silent. In order to determine whether a fiduciary relationship exists,

the factors to be considered are: the degree of kinship of the parties; the disparity in age, health, and mental condition; education and business experience between the parties; and the extent to which the allegedly subservient party entrusted the handling of her business affairs to the other and reposed faith and confidence in him.

*Pottinger v. Pottinger,* 238 Ill.App.3d 908, 179 Ill.Dec. 116, 124, 605 N.E.2d 1130, 1138 (1992); *see also Burdett v. Miller,* 957 F.2d 1375, 1381 (7th Cir.1992) ("If a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him, a fiduciary relationship is established."). Here, the plaintiffs point to their lack of financial management and tax preparation experience, and to the complete trust they placed in Kreger, who was presented as a tax planning expert. Pls.' 12(N) ¶¶ 1–5.[6] In addition, the plaintiffs have raised a genuine issue as to whether Kreger's silence violated his alleged duty to disclose as the Terrells' fiduciary. Thus, if the plaintiffs prove fraudulent concealment at trial, then the remaining claims are timely. Accordingly, we deny the Kreger Defendants' motion for summary judgment on the remaining common law claims.[7]

---

5. To the extent that the plaintiffs rely on *Kenroy* to argue that the fraudulent concealment of the TSI Defendants is imputable to the Kreger Defendants, we reject the argument. Although *Kenroy* does indeed hold that a defendant's "knowledge or approval of the concealment" committed by another person, or the defendant's "active[] participat[ion] in the fraudulent concealment" committed by another, may render the other person's concealment imputable to the defendant, *Kenroy,* 37 Ill.Dec. at 295, 296, 402 N.E.2d at 185, 186, the plaintiff details only how the TSI Defendants allegedly concealed the facts, and does not specify Kreger's involvement in the concealment, Pls.' Resp. at 16–18.

6. Our conclusion that there exists a genuine issue over whether Kreger owed a fiduciary duty to the plaintiffs such that silence constitutes fraudulent concealment also answers the Kreger Defendants' argument, made in their first summary judgment motion, that no evidence supports imposing a fiduciary duty on Kreger.

7. We note that the plaintiffs argue in the alternative that, even if Kreger did not owe them a fiduciary duty such that his silence was fraudulent concealment, Kreger nonetheless fraudulently concealed the causes of action by committing affirmative acts of concealment. However, the plaintiffs discuss only three "example[s]," Pls.'s Resp. at 20–21, two of which do not save any claim. The underlying claim of the plaintiffs' second example, that Kreger helped conceal the wrongful siphoning of $20,000 from Pine Street by labelling the funds as a "lease-up fee" paid to JoAnn, is barred by the statute of repose, *see supra* Part III(A), and the plaintiffs do not argue that the general fraudulent concealment statute, § 13–215, can toll the more specific accountants' statute of repose, § 13–214.2(b), absent an express reference to the fraudulent concealment statute in the repose statute. *Cf. Dohra v. Alcon (Puerto Rico), Inc.,* No. 92 C 2624, 1994 WL 395000, at *2 (N.D.Ill. July 26, 1994). The plaintiffs' third example, that Kreger helped TSI prepare a market valuation of the Pine Street prop-

Finally, we analyze the Kreger Defendants' motion for summary judgment as to Count 10, the claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1–12, just as we have analyzed the common law claims because we conclude that the accountants' limitations and repose periods, 735 ILCS 5/13.214.2(a), (b), apply to the ICFA claim as well. Although the ICFA provides for a three-year limitations period, § 10a(e), the more specific accountants' statutes of limitations and repose apply to all "[a]ctions based upon tort, contract *or otherwise*," 735 ILCS 5/13–214.2(a) (emphasis added), including other statutory actions. *See Hayes v. Mercy Hosp. and Medical Ctr.*, 136 Ill.2d 450, 145 Ill.Dec. 894, 898–99, 557 N.E.2d 873, 877–78 (1990) (construing nearly-identical language in medical malpractice repose period as "all-inclusive" and encompassing "all theories of liability"); *Walsh v. Barry–Harlem Corp.*, 272 Ill.App.3d 418, 208 Ill.Dec. 558, 563, 649 N.E.2d 614, 619, *appeal denied*, 163 Ill.2d 591, 212 Ill.Dec. 440, 657 N.E.2d 641 (1995) (holding that more specific medical malpractice statute of limitations applies to ICFA claim, rather than ICFA's three-year limitations period). Accordingly, consistent with our above analysis, we grant in part and deny in part the Kreger Defendants' motion for summary judgment as to Count 10.

### C. RICO Claims—Statute of Limitations

The Kreger Defendants' last argument in their first summary judgment motion attacks the timeliness of the two RICO counts, which were brought under 18 U.S.C. § 1962(c) and (d). We hold that the RICO claims are not time-barred. If, as the Kreger Defendants themselves argue, the plaintiffs' causes of actions accrued in 1991, then the plaintiffs timely filed the RICO actions within the four-year limitations period governing such actions. *Agency Holding Corp. v. Malley–*

*Duff & Assocs.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Indeed, the Kreger Defendants effectively abandoned their statute of limitations argument against the RICO claims; they failed to reply at all to the plaintiffs' reference to the four-year limitations period. Accordingly, we deny the Kreger Defendants' first motion for summary judgment, which is based on limitations grounds, as to the RICO counts.

### D. RICO Claims—Participation in the Operation or Management of the Enterprise

In their second summary judgment motion, the Kreger Defendants argue that, even if the RICO claims were timely filed, Kreger and his firm are not liable under RICO. Count 11 of the Amended Complaint alleges that TSI is an "enterprise" under RICO, Amended Compl. ¶ 159, and that Jack Childers, Michael Childers, Frank Schuette, Kreger, and Kreger's firm violated § 1962(c), which provides:

> It is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity. . . .

(emphasis added.) In support of their motion, the Kreger Defendants rely primarily on *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

In *Reves*, an outside accounting firm misstated the value of an asset on the financial statements of its client, a farm cooperative; the inflated value allowed the financial statements to reflect a positive net worth. *Id.* at 175–76, 113 S.Ct. at 1168. After the cooperative filed for bankruptcy, the cooperative's noteholders sued, among others, the accounting firm. The Court held that the accounting

---

erty in order to reduce the assessed property tax, simply had no tendency to conceal the causes of action. Only the plaintiffs' first example, that Kreger helped conceal the misappropriation of TSI funds—and thus TSI's clients' funds—for the TSI Defendants' personal use by reclassifying unsupported expenses as miscellaneous expenses and by using JoAnn to deduct them for tax treatment, constitutes an affirmative act of conceal-

ment that would suffice to save the allegations in Amended Compl. ¶¶ 100(g), 118(g), 148(g). Thus, if the plaintiffs cannot convince the trier of fact that Kreger was a fiduciary and that he fraudulently concealed the causes of action by remaining silent, then the plaintiffs may rely only upon the reclassification of expenses to support fraudulent concealment of the specific underlying claim.

firm had not "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." § 1962(c).

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have *some part in directing those affairs.*

507 U.S. at 179, 113 S.Ct. at 1170 (emphasis added). This requirement, the Court explained, could also be formulated as "participat[ion] in the operation or management of the enterprise itself." *Id.* at 183, 113 S.Ct. at 1172. However, in responding to the government's concern that the operation or management test limited § 1962(c) to upper management, the Court added that "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." *Id.* at 184, 113 S.Ct. at 1173.

Recently, the Seventh Circuit adopted the First Circuit's reconciliation of "the Supreme Court's holding in *Reves*—that a defendant must play some part in directing the enterprise's affairs—with its subsequent statement that 'lower-rung participants . . . under the direction of upper management' may also 'operate' the enterprise." *MCM Partners v. Andrews–Bartlett & Assocs.,* 62 F.3d 967, 978 (7th Cir.1995) (quoting *Reves,* 507 U.S. at 179–80, 184 & n. 9, 113 S.Ct. at 1170, 1173 & n. 9).

> *Reves* is a case about the liability of *outsiders* who may assist in the enterprise's affairs. Special care is required in translating *Reves'* concern with "horizontal" connections—focusing on the liability of an outside adviser—into the "vertical" question of how far RICO liability may extend within the enterprise but down the organizational ladder. In our view, the reason the accountants were not liable in *Reves* is that, while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command through which the enterprise's affairs were conducted.

*United States v. Oreto,* 37 F.3d 739, 750 (1st Cir.1994) (emphasis in original), *cert. denied,* ―― U.S. ――, 115 S.Ct. 1161, 130 L.Ed.2d 1116 (1995) (quoted by *MCM Partners,* 62 F.3d at 978).

In applying this view of *Reves,* the court in *MCM Partners* held that § 1962(c) reached two exhibition contractors who had reluctantly agreed, under threats of force from a moving equipment leasing company, to shut other leasing companies out of the convention center in which the exhibition contractors staged events. In order to determine whether the exhibition contractors "should be characterized as 'outsiders,' like the accounting firm in *Reves,* or as lower-rung participants who acted under the direction of the enterprise's upper management," the court in *MCM Partners* focused on the

> nature of the "enterprise" [that the plaintiff] has depicted, as both [exhibition contractors] are alleged to be members of an "association-in-fact" constituting the RICO enterprise. In *Reves,* by contrast, the plaintiffs maintained that the farm cooperative itself was the RICO enterprise, and the Court was then required to determine whether the accountants had conducted or participated in the conduct of the cooperative's affairs.

62 F.3d at 979. In addition to emphasizing that the exhibition contractors were alleged to be part of the association-in-fact enterprise, the court in *MCM Partners* pointed out that the goal of the enterprise could not ·have succeeded without the exhibition contractors. *Id.* Accordingly, the court held that the exhibition contractors were not outsiders, but rather lower-rung participants in the enterprise itself.

Applying these principles to the instant case, we conclude that the evidence shows that Kreger and his firm did not "conduct or participate . . . in the conduct of [the alleged] enterprise's affairs." Here, the plaintiffs allege that *TSI* is the RICO "enterprise." Amended Compl. ¶¶ 159, 166. The plaintiffs admit that the Kreger Defendants did not occupy a management position in TSI, Pls.' 12(N) ¶ 26, and instead argue that the Kre-

ger Defendants participated in operating TSI's affairs, Pls.' Resp. at 7–8. According to the plaintiffs, the Kreger Defendants' participation is evidenced by preparing tax projections in order to assist TSI to render investment advice; failing to disclose JoAnn's commissions; "allow[ing]" Walt to make loans to financially unworthy debtors; and "allow[ing]" Kreger and his firm to be a source of credibility for TSI's investments.[8] Pls.' Resp. at 8.

None of these contentions, however, considered alone or together can be characterized as directing TSI's affairs. *Cf. Reves,* 507 U.S. at 186–88, 113 S.Ct. at 1174 (accounting firm's failure to disclose did not alone constitute participation in operation or management of the alleged enterprise). Rather, the Kreger Defendants are more appropriately characterized as outsiders who played no part in directing TSI's affairs. Like the accounting firm in *Reves,* the Kreger Defendants provided accounting services—even services that allegedly amounted to fraud—to a client, but did not in way direct the client's affairs.[9] And unlike the situation in *MCM Partners,* the plaintiffs here did not name the Kreger Defendants as necessary members of an association-in-fact enterprise, but rather alleged (and have not proven otherwise) that TSI is the relevant enterprise. *Cf. MCM Partners,* 62 F.3d at 979 (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 265–66 & n. 5 (3d Cir.1995), and Daniel R. Fischel & Alan O. Sykes, *Civil RICO After Reves: An Economic Commentary,* 1993 Sup.Ct.Rev. 157,

193–94). Accordingly, we grant the Kreger Defendants' motion for summary judgment as to the RICO claim in Count 11.[10]

Likewise, we conclude that the Kreger Defendants are entitled to summary judgment as to Count 12, the RICO conspiracy count. Section 1962(d) provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Section 1962(d) "merely makes it illegal to conspire to violate any of the preceding actions of the statute." *United States v. Quintanilla,* 2 F.3d 1469, 1484 (7th Cir.1993). Accordingly, an agreement to violate § 1962(a), (b), or (c) constitutes a violation of § 1962(d), even if the actual underlying violation is not committed. *MCM Partners,* 62 F.3d at 979.

A defendant has engaged in a § 1962(c) conspiracy [11] if he or she agreed to conduct or participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity, and agreed to the commission of at least two predicate acts on the conspiracy's behalf. *MCM Partners,* 62 F.3d at 980 (citing *United States v. Neapolitan,* 791 F.2d 489, 498 (7th Cir.), *cert. denied,* 479 U.S. 939, 940, 107 S.Ct. 421, 422, 93 L.Ed.2d 371, 372 (1986)). In light of our above conclusion that the evidence fails to show that the Kreger Defendants' conducted or participated in the conduct of TSI's affairs, and in the absence of further evidence showing that the Kreger Defendants' agreed to do so, the

---

8. The plaintiffs also rely on Kreger's attendance at the February 1992 meeting between TSI and Walt, in which TSI and Kreger allegedly attempted to justify TSI's actions. Pls.' Resp. at 8. Even if Kreger's actions at the meeting could be characterized as directing TSI's affairs, § 1962(c) requires that the participation in the conduct of the enterprise's affairs be through "racketeering activity." The plaintiffs rely only on mail and wire fraud, 18 U.S.C. §§ 1341, 1343 as the racketeering activity, and the meeting does not constitute either form of fraud.

9. Indeed, the plaintiffs highlight their mistaken view of the § 1962(c) standard of liability by alleging that the defendants "conducted and participated in the affairs of TSI." Amended Compl. ¶ 166. *Reves* teaches that participation in the *conduct* of the enterprise's affairs is criti-

cal, and requires direction of the enterprise's affairs. 507 U.S. at 176–80, 113 S.Ct. at 1169–70.

10. In light of this disposition, we refrain from addressing the Kreger Defendants' other arguments in support of summary judgment, specifically, that the Kreger Defendants were not involved in the predicate acts and did not engage in a pattern of racketeering activity.

11. Although the plaintiffs fail to mention any specific subsection of § 1962 when describing the § 1962(d) conspiracy count, *see* Amended Compl. ¶¶ 168–70, presumably the plaintiffs' reference to a conspiracy to "conduct the affairs of TSI through a pattern of racketeering activity" contemplates a § 1962(c) conspiracy, *see id.* at ¶ 169.

plaintiffs have failed to show that Kreger and his firm conspired to violate § 1962(c). Thus, we grant the Kreger Defendants' motion for summary judgment as to the RICO conspiracy claim.

## IV. Jack and JoAnn Childers

In the third motion before this court, Jack and JoAnn Childers contend that they are entitled to summary judgment on the counts in which they are named.[12] Specifically, Jack moves for summary judgment as to Counts 2 (breach of fiduciary duty), 3 (common law fraud), 5 (conspiracy to defraud), 8 (declaratory judgment), 11 (RICO), and 12 (conspiracy to violate RICO); JoAnn moves for summary judgment as to Counts 5 and 12. As discussed below, we deny the defendants' motion for summary judgment.

■ First, there exists a genuine issue of fact as to whether Jack owed a fiduciary duty to the plaintiffs. As general partners in the Pine Street partnership, Jack and Walt owed each other a fiduciary duty as a matter of law. *Couri v. Couri*, 95 Ill.2d 91, 69 Ill.Dec. 117, 120, 447 N.E.2d 334, 337 (1983); *Cronin v. McCarthy*, 264 Ill.App.3d 514, 202 Ill.Dec. 129, 136, 637 N.E.2d 668, 675 (1994). Indeed, the evidence supports the reasonable inference that Jack was the partnership's managing partner, Pls.' 12(N) Additional Statement ¶ 13,[13] and as "managing partner, his obligation to deal fairly and openly and [to] disclose completely is heightened," *Cronin*, 202 Ill.Dec. at 136, 637 N.E.2d at 675. Furthermore, as to the other investments, a reasonable factfinder could determine that based on clear and convincing evidence of Jack's extensive involvement with Walt's investments, Pls.' 12(N) ¶¶ 15, 39–40, 48, Jack was Walt's fiduciary, *see Pottinger v. Pottinger*, 238 Ill.App.3d 908, 179 Ill.Dec. 116, 124, 605 N.E.2d 1130, 1138 (1992); *Western Nat'l Bank v. Moenning*, 224 Ill.App.3d 67,

166 Ill.Dec. 454, 460, 586 N.E.2d 412, 418 (1991), *appeal denied*, 145 Ill.2d 635, 173 Ill.Dec. 6, 596 N.E.2d 630 (1992); *see also Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir.1992). Accordingly, we deny Jack's motion for summary judgment as to Count 2.

■ Next, Jack contends that he never made any oral or written statements to Walt until they met on February 12, 1992, thus entitling Jack to summary judgment as to the common law fraud claim. Under Illinois law, a common law fraud claim does indeed require, *inter alia*, a "false statement of material fact," *Soules v. General Motors Corp.*, 79 Ill.2d 282, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980), and the plaintiffs concede that Jack made no statements to them prior to the February 1992 meeting. Pls.' 12(N) ¶¶ 7–8. However, "a principal may be liable to third persons for wrongful or tortious acts committed by his agent at his direction or while acting within the scope of his authority." *City of Chicago v. Roppolo*, 113 Ill.App.3d 602, 69 Ill.Dec. 435, 443–44, 447 N.E.2d 870, 878–79 (1983) (imputing fraud of agent to principal). Because there exists a genuine issue over the extent of Jack's control over Schuette, Michael Childers, JoAnn, and Kreger, Pls.' 12(N) Additional Statement ¶¶ 14–17, 25, 29, 36, 40, 44, 47, 59, 65–67, and thus over the imputability to Jack of the other TSI Defendants' alleged statements and omissions of material facts, we deny Jack's motion for summary judgment as to Count 3.

■ As to the claims of conspiracy to defraud and conspiracy to violate RICO, Counts 5 and 12 respectively, Jack contends that the evidence fails to support a reasonable inference of the required conspiratorial agreement. Under Illinois law a civil conspiracy " 'is a combination of two or more

---

**12.** We note that, although the Amended Complaint names Jack Childers in the negligent misrepresentation claim, Amended Compl., Count VI ¶¶ 127, 130–31, he does not move for summary judgment as to that count. We thus do not address that claim.

**13.** We note that ¶ 13 of the defendants' answer to the plaintiffs' 12(N) additional statement of facts provides one example of the defendants' repeated

failures to support denials with citation to the record. Under Local Rule 12(M), (N), the movant's answer to the nonmovant's additional statement of facts must be "in the form prescribed in section N for a response," that is, with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Mere denials are insufficient to respond to the nonmovants' additional statement of facts.

persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means.'" *Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 878 F.Supp. 1156, 1162 (N.D.Ill.1995) (quoting *Bosak v. McDonough,* 192 Ill.App.3d 799, 139 Ill.Dec. 917, 920, 549 N.E.2d 643, 646 (1989)). A RICO conspiracy is governed by "traditional concepts of conspiracy law," and thus requires an *"agreement* to violate RICO's substantive provisions." *Schiffels v. Kemper Fin. Servs.,* 978 F.2d 344, 348 (7th Cir.1992) (emphasis in original); *see also United States v. Archambault,* 62 F.3d 995, 999 (7th Cir. 1995). In the instant case, a reasonable factfinder could infer the conspiratorial agreement from the evidence of Jack's personal gains on investments made on Walt's behalf, Pls.' 12(N) Additional Statement ¶¶ 19, 22, 28, 59, and from the evidence of Jack's intimate relationship with the other TSI Defendants regarding the plaintiffs' financial affairs, Pls.' 12(N) Additional Statement ¶¶ 9–10, 19, 44, 53, 62, 65. Thus, we deny Jack's summary judgment motion as to Counts 5 and 12.

In addition, we deny Jack's motion as to the declaratory judgment claim, Count 8 of the Amended Complaint. As we have already held, Jack owed Walt a fiduciary duty as to the Pine Street partnership, *see supra,* and the evidence suffices to show that Jack's mishandling of the partnership's finances may require him to indemnify Walt's liability on the outstanding mortgage. Accordingly, Count 8 survives the motion for summary judgment.

▌ Next, Jack contends that he did not commit any of the predicate acts of the RICO claim, § 1962(c), which alleges a pattern of racketeering activity through mail and wire fraud. However, "it is irrelevant that the defendant did not personally mail the letters in question. All that is required is that a defendant cause the mail to be used, which he does when he acts with the knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen." *United States v. Koen,* 982 F.2d 1101, 1107 (7th Cir.1992) (quotations omitted); *cf. United States v. Bates,* 852 F.2d 212, 216 (7th Cir.

1988) (explaining that cases construing mail fraud statute are applicable to wire fraud statute). Here, the evidence supports the reasonable inference that, in addition to Jack's own use of the mails and telephone wires to secure the allegedly fraudulent Pine Street commissions and "lease-up fee," Pls.' 12(N) Additional Statement ¶¶ 71–73, he also knew that Michael Childers, Schuette, and JoAnn used the mails and wires to carry out the allegedly fraudulent transactions. Thus, we deny Jack's motion for summary judgment as to Count 11.

▌ Finally, JoAnn moves for summary judgment as to the two counts in which she is named, Counts 5 and 12, the conspiracy to defraud and the RICO conspiracy claims respectively, arguing that the evidence fails to show a conspiratorial agreement between her and the other defendants. However, under Illinois law, a person "who knowingly accepts the fruits of fraudulent conduct is also guilty of that fraud." *Shacket v. Philko Aviation, Inc.,* 590 F.Supp. 664, 668 (N.D.Ill.1984) (citing *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 452–53 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982)). The evidence supports finding that JoAnn accepted commissions and "lease-up fees" from the allegedly fraudulent scheme, and deducted false office expenses on her tax returns to cover moneys paid from TSI to other defendants, Pls.' 12(N) Additional Statement ¶¶ 57–60, and yet knew that she had not worked since 1958, *id.* ¶ 56. Thus, a reasonable factfinder could infer that she had agreed with the other defendants to defraud the plaintiffs by acting as the recipient of self-dealing payments. In addition, as to the RICO conspiracy, JoAnn cannot escape liability for mail and wire fraud schemes by deliberately avoiding knowledge of the illegal nature of the schemes. *See United States v. Diaz,* 864 F.2d 544, 549–50 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). Accordingly, we deny the JoAnn's motion for summary judgment as to Counts 5 and 12.

## V. Conclusion

For the reasons set forth above, we grant in part and deny in part the Kreger Defen-

dants' two motions for summary judgment, and we deny Jack and JoAnn Childers' motion for summary judgment. It is so ordered.