CAROLYN POTTINGER, as Guardian for Disabled Adult Ida Werner, Plaintiff-Appellee, v. ROBERT R. POTTINGER *et al.*, Defendants-Appellants.

Second District   No. 2—92—0308

Opinion filed December 23, 1992.

Peter L. Krentz, of Plano, for appellants.

Daniel J. Kramer, of Law Office of Daniel J. Kramer, of Yorkville, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendants, Robert R. Pottinger and Diane M. Pottinger, bring this timely appeal from the order of the circuit court of Kendall County awarding plaintiff, Carolyn Pottinger, as guardian for Ida Werner, a disabled adult, damages in the amount of $80,546.21.

The issues raised on appeal are: (1) whether the trial court's ruling that a constructive fraud or fiduciary duty in fact existed between defendants and plaintiff prior to the execution of a power of attorney was against the manifest weight of the evidence; and (2) whether the trial court erred in ruling that defendants failed to rebut the presumption of overreaching by clear and convincing evidence where, through the execution of a power of attorney, a fiduciary relationship existed by operation of law.

The following relevant facts are taken from the common-law record and report of proceedings. Ida Werner, at the time of trial, was a 93-year-old disabled adult. She is the great-aunt of plaintiff, Carolyn Pottinger, and either the aunt or great-aunt of defendant, Robert (Bob) Pottinger. Diane Pottinger is Bob's wife.

On September 19, 1974, Bob and Diane entered into an installment contract with Ida Werner for the purchase of her farm at a price of $95,200. Under the terms of the contract, Bob and Diane were obligated to make semiannual payments of $2,380 plus 5% interest until the entire balance was paid. Additionally, they assumed responsibility for the payment of the real estate taxes commencing in 1975. The parties further acknowledged that, in addition to the farm tenant house and a complete set of farm buildings, there was a second residence on the property and that Ida Werner would retain a life estate interest in that second residence.

On September 14, 1982, Ida Werner executed a power of attorney appointing Diane as her attorney in fact. The document provides, in relevant part:

"I, IDA WERNER, *** hereby appoint DIANE POTTINGER, *** my attorney, for me and in my name to ask, demand, sue

for, collect, recover and receive all sums of money, debts, and to agree for the same, and to give sufficient discharges for the same for me in my name. I further authorize and direct my said Attorney to act for me in connection with the following:

1. To deposit, draw and endorse checks or drafts upon any and all bank accounts or deposits belonging to me."

At trial, Carolyn testified that early in 1989 Ida Werner expressed her concern that she was losing checks. In March 1989, Carolyn took Ida Werner to the bank to deposit some money and get cash. During the bank visit, Ida gave Carolyn an undisclosed amount of currency and told her that she "might as well have some of this before they take it all." When asked who "they" were, Carolyn responded that Ida was referring to Bob and Diane. During the following months, Ida occasionally mentioned to Carolyn that she was not receiving her checks or money that she should be getting and that "they [Bob and Diane] would borrow and not pay back."

By July 1989 Ida had become increasingly upset and expressed her wish to Carolyn that Diane no longer manage her financial affairs. The power of attorney designating Diane was terminated shortly thereafter, and Ida Werner subsequently appointed Carolyn as her attorney in fact and, ultimately, as her guardian.

Following her assumption of responsibility for Ida Werner's financial affairs, Carolyn determined that Ida Werner's total assets were approximately $90,000. She further testified that the assets showed an increasing trend until 1984 which, at that time, totaled approximately $96,000. After further analysis, Carolyn determined that approximately $29,000 of real estate taxes remained unpaid under the terms of the articles of agreement entered into in 1974 between defendants and Ida Werner and that defendants owed $42,000 in unpaid principal and interest. Carolyn testified that her calculations were based upon 10 unpaid principal payments totalling $23,000 and two years of unpaid interest at the rate of 5%. She further testified that approximately $25,000 of checks and withdrawals from Ida Werner's money market were written to, or for the benefit of, Bob and Diane during the period which Diane held the power of attorney.

On cross-examination, Carolyn stated that Ida Werner had given her $300 during their visit to the bank in March 1989 and that she had received additional checks from her in 1979, 1985 and 1986. Carolyn stated that she considered the checks as gifts; and, on redirect examination, she further stated that the checks were not issued to her while she was acting in a fiduciary capacity relative to Ida Werner.

Bob Pottinger, called as an adverse witness in plaintiff's case in chief, testified that the farm property real estate taxes from 1974 to 1984 were paid out of Ida Werner's account and that subsequent to 1984 he and Diane paid them. Bob also identified a group of receipts which were notated to evidence various principal and interest payments on the farm property. He testified that between 1982 and the last time he saw Ida, he and Diane would have Ida sign receipts evidencing principal and interest payments. Bob admitted that there were occasions where Ida would provide a receipt even though she received no payment from either Bob or Diane. Bob explained, however, that he and Diane would explain the receipts to Ida prior to her signing them and that he considered the receipts to be in the nature of a gift of forgiveness of the debt. Bob further stated that he did not take Ida to an attorney for independent advice concerning the receipts.

Bob further testified that approximately one week prior to the termination of the power of attorney he noticed a change in Ida Werner's mental condition. According to Bob, Ida Werner had begun accusing Diane of stealing her money, and in response to her accusations, Bob would go to Ida Werner's house and find her purse for her.

Bob also identified a cashier's check dated June 8, 1989, in the amount of $5,000 designating himself as the payee. Bob admitted that the source of the funds was Ida Werner's money market account and that he and Diane used the money, at least in part, to pay their personal bills. On cross-examination, Bob stated that the $5,000 was a gift from his aunt. He further testified that neither he nor his wife advised Ida Werner to seek independent advice about the money market transaction.

Additionally, Bob identified a group exhibit containing 18 checks in various amounts drawn on Ida Werner's checking account at the Yorkville National Bank from September 1983 until October 1987. The payee in each instance, with the exception of one check, was either Bob or Diane Pottinger, and the total amount of the checks equalled $13,503.11. Six of the checks were signed "Mrs. Ida Werner" or "Ida Werner." The remaining 12 checks were signed "Diane Pottinger p.o.a." Bob admitted that the entire group of checks was written for "payment of taxes and the like" and that he at no time, prior to or during the time the checks were written, advised Ida Werner to seek the advice of an attorney or accountant to determine if "making those gifts" were in Ida Werner's best interest.

Bob further testified about additional dealings with Ida Werner. In 1985, Bob and Diane decided to build a new home on the farm property. In order to obtain financing, however, the lender required that

Bob and Diane hold title to the farm property. Admitted into evidence was a group exhibit containing a warranty deed, junior mortgage and subordination agreement. The warranty deed, dated October 2, 1985, conveyed title to the farm property described in the articles of agreement to Bob and Diane as joint tenants. The junior mortgage, dated November 8, 1985, purported to secure the payment of a promissory note executed in favor of Ida Werner in the principal amount of $42,840. There is no indication in the record as to how the principal amount was determined. The mortgage document also reserved to Ida Werner a life estate in the residence located on the property.

As a further condition of obtaining the financing, the lender also required that Ida Werner subordinate her life interest in the second residence to the bank's senior interest in the farm property. Bob testified that he brought a copy of the subordination agreement to Ida Werner. After he explained to her "what was required," Bob stated that Ida Werner had no objection to the agreement. Bob was unable to recall whether he explained to Ida Werner that should he or Diane default on their home loan, she would lose her life estate interest in the second residence.

In defendants' case in chief, Bob Pottinger testified that Ida Werner initiated the sale of the farm property to Bob and Diane in 1974. He admitted that he and Diane did not initially pay the real estate taxes as called for in the articles of agreement, but Ida Werner volunteered to pay the tax bills.

On cross-examination, Bob admitted that up until the execution of the power of attorney in 1982, Ida was not inclined to give large sums of money to either Bob or Diane, and prior to that time the only gifts of money were relatively small amounts.

On redirect examination, Bob identified several checks in various amounts drawn on Bob and Diane's joint checking account and designating Ida Werner as the payee. With the exception of a single check, the checks all predate the execution of the power of attorney. Bob was unable to recall the reason for writing the checks to Ida Werner. He assumed, however, that it was for money that he and Diane had borrowed in the past. The parties subsequently stipulated that a payment of $3,000, as evidenced by the one check written after the power of attorney execution date, was deposited in Ida Werner's account.

Diane Pottinger testified that during the first years of the power of attorney Ida Werner ordinarily continued to write her own checks. Eventually, after a year or so, Diane began writing checks for Ida Werner. Diane testified that she balanced Ida Werner's checking ac-

count, but she never provided any investment advice. She stated that investment decisions remained with Ida Werner.

Diane also identified copies of the receipts reflecting principal and interest payments. She testified that some of the receipts were for principal and interest payments that were not paid. Diane stated, however, that it was Ida Werner's idea to issue the receipts notwithstanding the nonpayment and that Ida Werner told her: "I don't need the money, but write out a—write so I can sign it because some day when I'm not here, the people that don't have time for me now will be here when I'm gone fighting over the money." Diane further testified that she believed that Ida Werner had sufficient assets to maintain herself.

Diane also recounted the events surrounding the $5,000 money market withdrawal. Diane stated that Ida Werner received her money market statement reflecting an approximate balance of $11,000 and that Ida Werner had told Diane that she did not want the money. Diane testified that she advised Ida Werner to leave the money in her account. Ida Werner, however, persisted with her requests for Diane to take her to the bank. Although Diane initially refused Ida Werner's offer to give her the entire balance in the money market account, she ultimately agreed to take $5,000. Diane also stated that Ida Werner signed all of the documents pertaining to the money market withdrawal and that, in her opinion, Ida Werner was fully aware of the nature of the transaction.

Diane also testified that during the period from 1974, and more specifically after she and Bob moved next door to Ida Werner in 1985, she cleaned Ida Werner's house, washed the floors, did the laundry, brought her meals and, on occasion, took her to the bank. Diane also stated that Bob would take Ida Werner grocery shopping and perform maintenance work around her house. Finally, Diane testified that she never took any money from Ida Werner without being directed to; that she never betrayed any confidence; and that Ida Werner always had access to independent legal counsel.

On August 21, 1990, plaintiff, Carolyn Pottinger, as guardian for Ida Werner, filed a two-count complaint against defendants. Count I was entitled "Constructive Trust" and count II was entitled "Breach of Fiduciary Duty." The complaint sought the following relief: (1) an order declaring subordination agreements executed by Ida Werner void; (2) an accounting for funds due Ida Werner under the terms of the 1974 articles of agreement for deed entered into between Ida Werner and defendants; (3) a demand that defendants pay any delinquent sums of principal and interest still owing under the articles of

agreement; (4) an accounting of Ida Werner's checking and money market accounts to determine those sums used by defendants and for a return of those amounts; and (5) an order enjoining defendants' access to Ida Werner's funds without prior court approval.

Following a bench trial, the circuit court ruled in favor of plaintiff. In its opinion letter, dated July 5, 1991, the trial court determined that the evidence presented left no doubt "that a fiduciary relationship existed between defendants and Ida Werner." The court further concluded that plaintiff had met her burden under the law to raise the presumption of constructive fraud and breach of fiduciary duty. Therefore, the trial court continued, the burden shifted to defendants to rebut the presumption by clear and convincing proof, which defendants failed to do. Accordingly, the trial court found that the evidence was sufficient to establish a constructive trust and instructed the parties to prepare an order reflecting the following relief: (1) voiding of the subordination agreement; (2) requiring defendants to pay to Ida Werner all unpaid principal and interest sums and real estate taxes with interest at 5%; (3) repayment to Ida Werner of all cash transfers previously made to defendants; and (4) costs.

Following the issuance of the trial court's opinion letter, a dispute ensued as to the amount of money Ida Werner was entitled to receive. Defendants subsequently filed a "motion to reconsider or modify judgment, and [sic] alternatively, motion for a new trial." Following a series of continuances, the trial court, on February 14, 1992, entered its order disposing of defendants' motion for reconsideration and fixing the money award. The trial court's order states, in part:

> "IT IS HEREBY ORDERED that Judgment is entered in favor of the plaintiff, CAROLYN POTTINGER as Guardian for the Disabled Adult, IDA WERNER and against ROBERT R. POTTINGER and DIANE M. POTTINGER in the sum of $80,546.21, said sum being calculated as follows:
>
> | 1) Real Estate installment contract payments | $33,195.06 |
> | 2) Real Estate taxes | $28,848.04 |
> | 3) Transfers from account of IDA WERNER | $18,503.11 |
> | Total: | $80,546.21" |

As a preliminary matter, it is necessary to consider the parties' characterization of the remedy applied by the trial court. In their briefs, both parties characterize the relief granted as the imposition of a constructive trust. A constructive trust is generally imposed in two situations: (1) where actual or constructive fraud is considered as

equitable grounds for raising the trust; and (2) where a fiduciary duty exists and there is a subsequent breach of that duty. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193.) It is a restitutionary remedy designed to restore to a plaintiff property of which he has been unjustly deprived and to take from the defendant property which, if retained, would unjustly enrich him. (*Ray v. Winter* (1976), 39 Ill. App. 3d 567, 576.) It is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property because it would be inequitable for that party to retain possession of the property. (*Suttles*, 126 Ill. 2d at 193.) The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary. *Suttles*, 126 Ill. 2d at 193.

■■ Although we recognize that a successful breach of fiduciary duty claim may give rise to the imposition of a constructive trust, the trial court's order does not restore title or possession of wrongfully acquired property to plaintiff. While the trial court's opinion letter stated that it found the evidence sufficient to establish a constructive trust, we interpret the final order entered on February 14, 1992, as being an award of damages. Additionally, although plaintiff has labeled count I of her complaint as constructive trust, the prayer for relief, relating to both counts, seeks an accounting, injunctive relief and damages. It does not purport to seek the restoration of property to plaintiff, nor does it identify property upon which to impose the trust. Therefore, we will analyze the parties' appellate contentions in the context of whether the evidence supported an award of damages as opposed to the imposition of a constructive trust.

Additionally, we note that the trial court, in its opinion letter, does not distinguish between the prepower of attorney time frame and the post-power of attorney time frame for purposes of reaching its conclusion that a fiduciary relationship existed between plaintiff and defendants. Instead, the trial court appears to view the time frame of 1974 to 1989 in its entirety. The language of the opinion letter makes it impossible to ascertain whether the trial court found that a fiduciary relationship "in fact" existed during the entire period from 1974 until the termination of the power of attorney, or whether a fiduciary relationship in fact existed until the execution of the power of attorney and thereafter by operation of law. For the purpose of our analysis, and to conform with the parties' agreements, we will divide the relevant time frame into two distinct periods: (1) from 1974 until the execution of the power of attorney in 1982; and (2) from the execution of the power of attorney until its termination in 1989.

Defendants' first contention is that the trial court's ruling is against the manifest weight of the evidence because there were no facts pleaded nor was there any evidence in the record to support its finding that a fiduciary relationship in fact existed prior to the execution of the power of attorney to Diane Pottinger. Plaintiff responds that it was unnecessary for the trial court to find that a fiduciary relationship in fact existed prior to the execution of the power of attorney agreement because of the trial court's conclusion that defendants' prepower conduct was tantamount to a constructive fraud.

■ As a general rule, a fiduciary relationship exists by operation of the law (*White v. Raines* (1991), 215 Ill. App. 3d 49, 59 (power of attorney)), or it may arise depending upon the factual circumstances of a particular case (see, *e.g.*, *Metropulos v. Chicago Art Glass, Inc.* (1987), 156 Ill. App. 3d 727, 736-37). Where a fiduciary relationship does not exist as a matter of law, it may nevertheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another so the latter gains influence and superiority over the former. (*Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 938.) In determining whether a confidential relationship exists, the factors to be considered are: the degree of kinship of the parties; the disparity in age, health, and mental condition; education and business experience between the parties; and the extent to which the allegedly subservient party entrusted the handling of her business affairs to the other and reposed faith and confidence in him. (*Hensler v. Busey Bank* (1992), 231 Ill. App. 3d 920, 927; *Melko v. Dionisio* (1991), 219 Ill. App. 3d 1048, 1061.) The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and, where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence. (*Hensler*, 231 Ill. App. 3d at 928.) The findings of the trial court, however, will not be disturbed unless they are against the manifest weight of the evidence. *Metropulos v. Chicago Art Glass, Inc.* (1987), 156 Ill. App. 3d 727, 737.

■ An examination of the record reveals that there are no allegations of a fiduciary relationship existing prior to the execution of the power of attorney. Furthermore, the record is devoid of any evidence to support a finding that Ida Werner reposed such faith and confidence in defendants to the extent that she entrusted the handling of her business affairs to them during the prepower of attorney period. The only evidence pertaining to this question is Diane's testimony that she performed household chores for Ida Werner and that Bob

would perform maintenance at her house; the existence of the articles of agreement; and Bob's reference, in his testimony, to Ida Werner as his aunt. The existence of a blood relationship (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 253; *Hubbard v. Schumaker* (1980), 82 Ill. App. 3d 476, 479) or friendship does not of itself establish a fiduciary relationship; nor does one person's assistance of another in business affairs. (*Kurti*, 124 Ill. App. 3d at 938.) Furthermore, we do not consider the existence of a contractual relationship between defendants and Ida Werner, without more, to support a finding that a fiduciary relationship in fact existed.

Additionally, the record reveals no allegations of constructive fraud, and there is no evidence, relative to the prepower of attorney time period, to raise the issue. Constructive fraud is defined as any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence. (See *Sale v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 905, 922.) It requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others. (*Sale*, 126 Ill. App. 3d at 922; *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 568; *Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 607.) Our review of the testimony and exhibits reveals no evidence of acts, statements or omissions made by defendants to Ida which amounted to a positive fraud, nor is there any evidence of a breach of a public or personal confidence. We conclude, therefore, that the trial court's ruling that a constructive fraud or fiduciary relationship in fact existed prior to the execution of the power of attorney is against the manifest weight of the evidence.

Defendants next contend that the trial court erred in ruling that they failed to rebut the presumption of overreaching by clear and convincing evidence where a fiduciary relationship existed by operation of law. In their brief, defendants concede that a fiduciary relationship existed between themselves and Ida Werner upon the execution of the power of attorney.

A power of attorney gives rise to a general fiduciary relationship between the grantor and the grantee as a matter of law. (*White v. Raines* (1991), 215 Ill. App. 3d 49, 59.) Once a fiduciary relationship is established, the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent. (*White*, 215 Ill. App. 3d at 59.) The dominant party then has the burden of proving by clear and convincing evidence that the transac-

tion was fair and equitable and did not result from undue influence over the servient party. *White*, 215 Ill. App. 3d at 59.

Defendants argue that Ida Werner's continued payment of the farm property real estate taxes during the first three years of the power of attorney established a course of conduct whereby she assumed responsibility for payment of the farm property real estate taxes; that it was Ida Werner's idea to execute the receipts evidencing principal and interest payments, although they were not actually paid by defendants; and that Ida Werner, up until September 1, 1986, was competent thus supporting defendants' conclusion that the amounts received prior to that date were valid *inter vivos* gifts.

■ After reviewing the entire record, we conclude that the trial court's determination, with respect to transactions subsequent to the execution of the power of attorney, was not against the manifest weight of the evidence. The evidence presented by defendants falls short of the quantum of proof necessary to rebut the presumption of undue influence. First, the fact that Ida Werner covered the defendants' unpaid tax payments does not necessarily suggest that she assumed responsibility for them. Defendants' argument apparently fails to recognize that Ida still held title to the farm property during the period she continued to make the payments. It is entirely conceivable, therefore, that she continued to make the payments to avoid a tax default and possible foreclosure.

Second, the only testimony offered in support of defendants' argument that it was Ida Werner's idea to execute the receipts, although the payments for principal and interest were not forthcoming, is that of the defendants themselves. The trial court was not required to accept this version as overcoming the presumption of undue influence. In a bench trial, the trial judge, as the trier of fact, is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony, and this court will not substitute its judgment unless an opposite conclusion is clearly evident. *Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865.

Finally, the mere fact that Ida Werner remained legally competent until 1986, thus supporting the conclusion that the transactions with defendants were gifts, also falls short of what is necessary to rebut the presumption of fraudulence. When a gift is made by one person to another who owes a fiduciary duty to the donor, that gift is presumptively fraudulent, and such presumption can be overcome only by clear and convincing evidence. (*In re Estate of Martin* (1990), 201 Ill. App. 3d 1061, 1064.) The mere fact that Ida Werner remained compe-

tent until 1986 does not, in our opinion, provide clear and convincing evidence sufficient to rebut the presumption of fraud. Moreover, after reviewing the entire record, we are unable to discern any additional support sufficient to reach the conclusion that defendants rebutted the presumption. We conclude, therefore, that the trial court's ruling that defendants failed to rebut the presumption of fraud or undue influence subsequent to the execution of the power of attorney is not against the manifest weight of the evidence, and, accordingly, we affirm its order to that extent.

■ As a consequence of our holding, it is necessary to determine whether to remand this cause for a determination of damages, or whether a sufficient basis exists in the record to adjust the circuit court's award. After reviewing the record, we conclude that the award of $18,503 for transfers from the accounts of Ida Werner is supported by the testimony and exhibits; however, we are unable to determine precisely from the record the amount of unpaid real estate taxes and principal and interest payments allocable to the time period subsequent to the execution of the power of attorney. Accordingly, we must remand this cause for the trial court to determine these amounts. When so determined, these amounts are to be awarded in addition to the amount of $18,503 for transfers from Ida Werner's accounts.

For the foregoing reasons, the order of the circuit court of Kendall County is reversed in part and affirmed in part, and this cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

INGLIS, P.J., and UNVERZAGT, J., concur.