Hari **RAZDAN**, an Illinois resident, Plaintiff,

v.

**GENERAL MOTORS CORPORATION**, a Delaware corporation, Defendant.

No. 97 C 2522.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 3, 1997.

10. The court finds no reason to discuss Broski's    qualified immunity or mitigation arguments.

Donald B. Garvey, Law Offices of Donald B. Garvey and Associates, Ltd., Oak Brook, IL, for Plaintiff.

Louis Theros, Michelle M. Montgomery, Dickinson, Wright, Moon, VanDusen & Freeman, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Hari Razdan brings this suit against the General Motors Corporation (GM), claiming breach of fiduciary duty, fraud, constructive fraud, and breach of contract. Defendant moves to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, we grant the motion in part and deny it in part.

### FACTS[1]

In March of 1992, plaintiff Hari Razdan, a 56–year old mechanical/electrical engineer, was seeking work as a designer of electrical components for locomotives. The Electro–Motive Division of General Motors expressed interest in plaintiff, and sent him plane tickets so that he could travel from his home in Erie, Pennsylvania to the GM plant in La-Grange, Illinois for an interview. GM apparently decided that it wanted to hire plaintiff, and entered into negotiations with him through two employment agencies that acted as its agents, Dymanex and Mid–Tech. GM indicated that, due to a hiring freeze, it wanted plaintiff to work as a contract employee for a two-to-three month period before coming on as a full-time employee. Plaintiff responded that he would have to be paid $50.18 per hour as a contract employee to remain on a par with the salary he had received at his last position. Ultimately, GM

offered to hire plaintiff as a full-time employee making $72,800.00 per year on the condition that he first work as a contract employee making $35.00 per hour for a two-to-three month period. GM also offered to pay plaintiff's residual moving expenses once he became a full-time employee.

Shortly after plaintiff accepted GM's offer, GM asked him to sign an employment contract with a company called Contract Personnel Resources, or CPR, Inc. Although plaintiff had never heard of this company, he agreed to sign the agreement because GM told him that his compensation had to be "run through" CPR to avoid problems with the hiring freeze. On June 7, 1992, plaintiff began working at GM. After several months passed, he began asking when he would be made a full-time employee. GM put him off for several months, but finally offered him a full-time position in May of 1993. But GM did not offer plaintiff the salary he had originally been promised. Rather, it offered to pay him $5,300 per month (or $63,600 per year), plus a $5,000 signing bonus for the first year. This salary was significantly lower than the wage plaintiff was earning as a contract employee, and so he refused the offer. In response, GM told plaintiff that he could work as an independent contractor for as long as he wished. But this last promise turned out to be false. On November 17, 1995 GM terminated plaintiff without cause.

Plaintiff then brought this suit in Illinois state court, claiming that GM had breached its fiduciary duty and its employment contract, and had committed fraud and constructive fraud. GM removed the case to federal court on the basis of diversity of citizenship, and now moves to dismiss the case. We have jurisdiction pursuant to 28 U.S.C. § 1332.

## DISCUSSION

We will not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2

---

1. In considering defendant's motions to dismiss, we accept as true all well-pleaded allegations in plaintiff's complaint. *Travel All Over the World v.*

*Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996).

758

L.Ed.2d 80 (1957); *see also Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). In considering a motion to dismiss we must assume the truth of all well-pleaded factual allegations, and make all possible inferences in favor of the plaintiff. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972); *Vaden v. Village of Maywood, Illinois,* 809 F.2d 361, 363 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). We will consider each of plaintiff's claims in turn.

### 1. Breach of Fiduciary Duty and Constructive Fraud (Counts I and III)

In Illinois, a fiduciary relationship may arise either as a matter of law or in a situation "where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another so the latter gains influence and superiority over the former." *Pottinger v. Pottinger,* 238 Ill. App.3d 908, 179 Ill.Dec. 116, 123, 605 N.E.2d 1130, 1137 (2d Dist.1992). In determining whether such a relationship exists, courts consider "the degree of kinship of the parties; the disparity in age, health, and mental condition; education and business experience between the parties; and the extent to which the allegedly subservient party entrusted the handling of her business affairs to the other and reposed faith and confidence in him." *Id.* 179 Ill.Dec. at 123–24, 605 N.E.2d at 1137–38 (citations omitted). Where the alleged relationship does not arise as a matter of law, "facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence." *Id.* at 124, 605 N.E.2d at 1138 (citations omitted).

Plaintiff acknowledges that fiduciary obligations do not automatically arise between employers and employees by virtue of the employment relationship. *See Gross v. University of Chicago,* 14 Ill.App.3d 326, 302 N.E.2d 444, 454 (1st Dist.1973); *Vargas v. Esquire,* 166 F.2d 651, 654 (7th Cir.), *cert. denied,* 335 U.S. 813, 69 S.Ct. 29, 93 L.Ed. 368 (1948). Rather, he argues that a fiduciary relationship arose between himself and General Motors because of the circumstances under which his employment contract was made. At the time he was hired Mr. Razdan was 56 years old and unemployed, with little bargaining power. Knowing this, GM induced him to move across the country by promising him that in two-to-three months it would give him a full-time job at an annual salary of $72,800. By inducing Razdan to put himself in its hands, GM made itself his fiduciary.

Plaintiff's argument is not convincing. Although Mr. Razdan may have been economically vulnerable at the time he was hired, nothing in the pleading or the evidence indicates that other than an arms-length transaction took place between the parties. Plaintiff is a highly educated professional with significant business experience, and he negotiated the terms of his employment contract before taking the job. He did not entrust the handling of his business affairs to GM, except to the extent that he relied on its promise to give him a full-time job in a few months. Such a promise may have created duties on GM's part (an issue we consider below); but they did not create fiduciary duties. We dismiss Count I of plaintiff's complaint.

For similar reasons, we dismiss plaintiff's claim of constructive fraud. Constructive fraud "is a breach of a legal or equitable duty that the law declares fraudulent because of its tendency to deceive others, irrespective of the moral guilt of the wrongdoer." *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.,* 159 Ill.App.3d 834, 111 Ill.Dec. 649, 654, 512 N.E.2d 1286, 1291 (1st Dist.1987) (citations omitted). An essential element of the claim is "a breach of duty, especially fiduciary duty." *Kohler v. Leslie Hindman, Inc.,* 80 F.3d 1181, 1188 (7th Cir.1996); *see also Beaton & Associates,* 111 Ill.Dec. at 654, 649, 512 N.E.2d at 1291 (breach of fiduciary duty); *Chicago v. Roppolo,* 113 Ill.App.3d 602, 69 Ill.Dec. 435, 443, 447 N.E.2d 870, 878 (1st Dist.1983) (breach of duty to secure permission of Landmark Commission before demolishing landmarked building); *Estate of Neprozatis,* 62 Ill.App.3d 563, 19 Ill.Dec. 470, 474, 378 N.E.2d 1345, 1349 (1st Dist.1978) (great inequality between the parties and evidence of overreaching so extreme as to "shock the conscience"). The mere breach of an employment contract is insufficient to give rise to a claim of constructive fraud. Nor does

the fact that GM may have hired Razdan as a contract employee in order to avoid the costs associated with hiring full-time employees give rise to such a claim. Such employment practices, although perhaps regrettable, are well-known and perfectly legal. Plaintiff has failed to state a claim for constructive fraud.

## 2. Fraud (Count II)

■■■ Under Illinois law, the elements of fraud "include a false statement or omission of material fact, which is made by defendant with the intent to deceive and induce the plaintiff to act, plus justifiable reliance by plaintiff on the false statement or omission, and an actual injury to plaintiff as a result of the misstatement or omission." *Lidecker v. Kendall College*, 194 Ill.App.3d 309, 141 Ill. Dec. 75, 78, 550 N.E.2d 1121, 1124 (1st Dist. 1990). Normally, the fraudulent statement must relate to a past or present fact. A "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities ... ordinarily does not constitute an actionable misrepresentation." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir.1993) (citations omitted). There is an exception to this rule, however, which states that where a false promise of future conduct "is the scheme or device to accomplish the fraud," such a promise can be actionable as fraud. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir.1992) (citations omitted). But because promissory fraud is a disfavored cause of action in Illinois, the claim can only survive the pleading stage if the plaintiff "point[s] to specific, objective manifestations of fraudulent intent.... If the rule were otherwise, anyone with a breach of contract claim could

open the door to tort damages by alleging that the promises broken were never intended to be performed." *Id.* at 1012.

■■■ Plaintiff's promissory fraud claim fails because he has not pointed to any objective *manifestations of fraudulent intent.*[2] Indeed, the facts as stated in the Complaint point toward the opposite inference: that GM negotiated with plaintiff in good faith, communicated its inability to give him a full-time position at the present time, but promised him one after a short but indefinite period of work as an independent contractor. The actual offer of full-time employment came several months later than GM promised, and was for a salary approximately $10,000 per year less. Nonetheless, the relative closeness between GM's original promise and its actual offer does not support a fraud claim. Nothing in the pleadings indicates that GM intended to trick Razdan into accepting employment by making false promises. *Cf. Roda v. Berko*, 401 Ill. 335, 81 N.E.2d 912 (1948) (buyer of land promised seller that he would build factory when his actual intention was to use property as a junkyard). Because plaintiff has not met the pleading requirements for promissory fraud, Count II of the Complaint is dismissed.

## 3. Breach of Employment Contract (Count IV)

■■■ Finally, plaintiff claims that GM breached two separate employment contracts. First, GM breached its oral contract to give him a full-time position at a salary of $72,800 per year within two-to-three months after he was hired. Secondly, GM breached

2. Plaintiff argues that GM made some misrepresentations of existing fact: "(a) first, they represented that the term of the independent contractor arrangement was three months; (b) they concealed the fact that the independent contractor arrangement was not limited in duration; (c) they represented that the position was one of full-time employment, subject to a three-month independent contractor arrangement; (d) they represented that the salary for the full-time position they were offering him was $72,800 per year plus applicable benefits; (d)[sic] they represented that the contract with CPR was just for the purpose of handling payroll; (e) they concealed the fact that the position was not a full-time position at $72,800 per year." Plaintiff's

Response to Defendant's Motion to Dismiss, p. 11. All but one of these alleged misrepresentations of present fact are simply rephrasings of plaintiff's claim that defendant promised to give him a full-time job at a salary of $72,800 after he had worked as an independent contractor for two-to-three months. The only misrepresentation of present fact is GM's alleged statement that the contract with CPR was just for the purpose of handling payroll. But this statement does not appear to be fraudulent, nor has plaintiff alleged any damage resulting from it. The pleadings indicate that he was fully aware of his status as a contract employee from the time he signed the contract, regardless or whether GM or CPR was technically his employer.

its oral contract to employ plaintiff permanently as a contract employee. GM moves to dismiss both of these claims, arguing that the terms of the first contract were not sufficiently clear and definite to be enforceable, and that the second contract is barred by the Statute of Frauds, lack of consideration, and lack of mutuality. We will consider these claims in turn.

Plaintiff has alleged sufficient facts to show the existence of an oral contract to give him a full-time position at a salary of $72,800 within a few months of his hiring as a contract employee. Although GM claims that the terms of this contract are not clear and definite, we do not find this to be so. Rather, plaintiff has alleged a specific time frame for his promised promotion to full-time employee status, and a specific salary. The only undefined term is the benefits package to be given plaintiff upon his promotion. But this hardly constitutes a major ambiguity when the employer is a multinational corporation that offers its employees largely standardized benefits packages. Moreover, the case relied on by defendant, *Wilder v. Butler Manufacturing Co.*, 178 Ill.App.3d 819, 128 Ill.Dec. 41, 533 N.E.2d 1129 (3d Dist.1989), is inapposite to Razdan's claim. In *Wilder*, the plaintiff claimed that her employer had given her an oral contract for lifetime employment. Because there is a presumption in Illinois that employment contracts are at-will, the court found that the promise of lifetime employment must be clear and definite to be enforceable. *Id.* 128 Ill.Dec. at 43, 533 N.E.2d at 1131. But Razdan does not claim that the first contract was for lifetime or permanent employment, and so the heightened pleading requirements of *Wilder* do not apply. We decline to dismiss this aspect of plaintiff's claim.

 Plaintiff has failed to make out a claim for breach of the second contract, however. According to the pleadings, this contract consisted solely of an alleged statement by one of GM's agents that plaintiff could keep his position as an independent contractor "for as long as he wished." This statement is not sufficiently clear and definite to create an enforceable contract for permanent employment under *Wilder*. *Id.* Moreover, the Illinois Supreme Court has recently held that oral contracts for lifetime employment violate the Statute of Frauds, *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill.Dec. 911, 915–16, 680 N.E.2d 1347, 1351–52 (1997), and that part performance of such contracts do not exempt them from the Statute when the plaintiff has been fully compensated for the work he has performed. *Id.* 223 Ill.Dec. at 916, 680 N.E.2d at 1352. Because Razdan was paid for his work as a contract employee, his partial performance does not trump the Statute of Frauds. Therefore, we dismiss this aspect of plaintiff's claim.

### CONCLUSION

For the foregoing reasons, we dismiss Counts I, II and III of plaintiff's complaint in their entirety, and dismiss Count IV in part.