FOURTH DIVISION
August 24, 2006

No. 1-05-3867

| | | |
|---|---|---|
| DOUGLAS ROBINSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04L11212 |
| | ) | |
| BDO SEIDMAN, LLP, | ) | The Honorable |
| | ) | Stuart A. Nudelman, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Douglas Robinson appeals the trial court's dismissal of his first amended complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2004)). In the complaint, plaintiff alleged claims of breach of contract and promissory estoppel against defendant BDO Seidman, LLP, which, plaintiff alleged, had terminated plaintiff's employment without cause. On appeal, plaintiff contends that his complaint was wrongly dismissed when he sufficiently pled that the oral employment contract was supported by consideration, was clear and definite in its terms and was not barred by the statute of frauds and that he sufficiently pled the necessary elements of promissory estoppel.

Plaintiff's first amended complaint, filed April 18, 2005, alleged the following facts. From May 2002 until the end of February 2004, plaintiff was employed by Huron Consulting Group (Huron) as a director of financial and economic consulting. At Huron, plaintiff was paid a $118,500 salary per year and a $10,000 bonus per year and received benefits including a 401(k) plan, health insurance and stock options.

In August 2003, plaintiff was contacted by a headhunter on behalf of defendant. The

headhunter explained that defendant intended to establish a division devoted to computer fraud and forensic investigation and was looking for someone to head the division.  In August or September 2003, plaintiff met with Irv Levinson, an employee of defendant, to discuss the position.  Levinson and plaintiff met again in October and December of that year.  At the December 2003 meeting, another of defendant's employees, Susan Henry, was also present.  During the December meeting, Levinson and Henry told plaintiff that if he accepted the position as head of defendant's new department, "he would be employed as long as it takes to successfully build the department, and then as long as plaintiff desired."  On January 15, 2004, plaintiff flew to New York, where he met with defendant's employee Carl Pergola for a final interview.

On January 23, 2004, defendant offered plaintiff the position and presented plaintiff with an employment package that would entitle him to a salary of $126,000 per year, benefits including a 401(k) plan and health insurance, but no annual bonus or stock options.  Plaintiff accepted the offer in early February 2004 and resigned from his position at Huron on February 16, 2004.  Plaintiff began working for defendant on March 1, 2004.  On May 1, 2004, plaintiff's employment was terminated.

Defendant filed a motion to dismiss plaintiff's first amended complaint on June 14, 2005.  Defendant alleged that plaintiff's complaint failed to state a cause of action upon which relief could be granted.  The trial court granted defendant's motion and dismissed plaintiff's first amended complaint with prejudice on October 25, 2005.

"In reviewing the granting of a motion to dismiss, this court must accept as true all well-pleaded facts. [Citation.] A court should not dismiss a cause of action on the merits unless it

clearly appears that no set of facts can be proved which would entitle the plaintiff to recover." Jago v. Miller Fluid Power Corp., 245 Ill. App. 3d 876, 878 (1993). We review the trial court's dismissal of a complaint *de novo*. Storm & Associates, Ltd. v. Cuculich, 298 Ill. App. 3d 1040, 1047 (1998).

Essentially, plaintiff's amended complaint alleged that in terminating his employment in May 2004, defendant breached two of the oral employment contract terms. First, defendant breached its agreement to employ plaintiff until the new computer fraud and forensic investigation department was successfully established, and second, defendant breached its agreement to employ plaintiff for as long as plaintiff desired.

Plaintiff first contends and defendant does not dispute that the terms of the oral employment contract were adequately supported by consideration. Plaintiff argues that in exchange for his promise to leave his higher paying job at Huron, defendant relinquished its right to terminate plaintiff at will.

We agree that the contract was supported by adequate consideration. In McInerney v. Charter Golf, Inc., 176 Ill. 2d 482 (1997), the supreme court held that when "the employee relinquishes something of value in a bargained-for exchange for the employer's guarantee of permanent employment, a contract is formed." McInerney, 176 Ill. 2d at 488. There, as here, the employee opted not to take a more lucrative job in exchange for the employer's promise of permanent employment. The court held that the contract was supported by consideration.

Having made that determination, we focus now on the first allegedly breached contract term: defendant's agreement to employ plaintiff "as long as it takes to successfully build the

1-05-3867

department."

Generally, an employment agreement that does not specify a definite duration "will last for as long as is mutually satisfactory, and either employer or employee may terminate the employment 'at will,' without liability for breach of contract." Martin v. Federal Life Insurance Co., 109 Ill. App. 3d 596, 600 (1982). Thus, an employee at will may be discharged for any reason or for no reason at all. Martin, 109 Ill. App. 3d at 600. In order to overcome the assumption that an employment is at will, the terms of an oral contract for employment for a specific duration must be clear and definite. Wilder v. Butler Manufacturing Co., 178 Ill. App. 3d 819, 821 (1989); see also Jago, 245 Ill. App. 3d at 879. "[I]nformal expressions of goodwill and hope that naturally occur between a prospective employer and a prospective employee in an interview situation" are generally not sufficiently clear and definite to overcome the assumption that the employment was at will. Wilder, 178 Ill. App. 3d at 822.

A brief examination of the facts of other cases construing Illinois law is helpful to our analysis of whether defendant's assurance that if plaintiff accepted the position, he would be employed as long as it takes to successfully build the new department was sufficiently clear and definite to overcome the presumption that the employment was at will. In Johnson v. George J. Ball, Inc., 248 Ill. App. 3d 859 (1993), we found that the employer's representation that the employee would be hired to develop and conduct training programs that would last through 1991 was sufficiently clear and definite to establish permanent employment for a term. Similarly, in Maier v. Lucent Technologies, Inc., 120 F.3d 730 (7th Cir. 1997), the employer's letter stating that if the employee worked on a transition team, after the transition team was dismantled, he

would be assigned to a placement of his choice, was sufficiently clear and definite to overcome the presumption that the employment was at will.

On the contrary, in Kercher v. Forms Corp. of America, Inc., 258 Ill. App. 3d 743 (1994), the employer's representation that the employee would be groomed to be the company president was not sufficiently clear and definite to overcome the presumption of at-will employment. In Wilder, the employer's promise that the employee would never have to anticipate a layoff and was a permanent employee was also not considered sufficiently clear and definite to overcome the presumption.

Though the facts of this case resemble those of Johnson in that in both instances the employee was offered a position in which he would develop the employer's new department, a crucial difference exists. In Johnson, a specific limit was placed on the duration of the employee's permanent employment: through 1991. Here, on the contrary, no specific duration was established. The contract terms in Maier were also more clear and definite than those in this case. In Maier, the employer specifically promised the employee that he would be able to choose his next assignment upon completion of his tenure on the transition team. Here, no such specific representations were made. Here, defendant's representations to plaintiff during the interview process that he would be employed until the new department was successfully established are similar to the informal expressions of goodwill and hope that were made to the employees in Kercher and Wilder. This conclusion is supported by the fact that the representation was made in conjunction with the very vague promise that plaintiff would be employed as long as he desired, and by the fact that the representation was made during the

interview process and plaintiff does not allege that it was mentioned again in a subsequent interview or when plaintiff was presented with his employment package. Accordingly, we find that defendant's assurance that plaintiff would be employed until the new department was successfully established was merely an "informal expression[] of goodwill and hope that naturally occur[s] between a prospective employer and a prospective employee in an interview situation" (Wilder, 178 Ill. App. 3d at 822), and was not sufficiently clear and definite to overcome the presumption that plaintiff's employment was at will. We note that, if the parties had more clearly defined when or what conditions would signify that the department had been successfully established, for example, when the equipment that would support the department was put into place, when the employees were hired and working or when the department was turning a profit, as did the parties in Johnson, we may have decided this issue differently and found that the contract term was sufficiently clear and definite to overcome the presumption of at-will employment.

Plaintiff's claim that defendant breached the employment contract term by which it agreed to employ plaintiff "as long as plaintiff desired" was also properly dismissed as it did not adequately state a cause of action.

First, the duration of this contract term was insufficiently clear and definite. In fact, the promise to employ plaintiff for as long as he desired was a mere "informal expression of goodwill and hope," referred to in Wilder. Wilder, 178 Ill. App. 3d at 822 (holding that oral pronouncements by the employer defendant that the employee plaintiff would be employed permanently and that she would never need to worry about being laid off if she continued to do

her job were not sufficiently clear and definite to overcome the presumption that the employment was at will); Jago, 245 Ill. App. 3d 876 (holding that letters written by the employer defendant to the employee plaintiff that referenced an annual salary and reporting to work permanently was not sufficiently clear and definite to overcome the presumption that the employment was at will).

Furthermore, the agreement that defendant would employ plaintiff as long as plaintiff desired is barred by the statute of frauds. The Illinois statute of frauds provides, "[n]o action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless *** in writing[] and signed by the party to be charged." 740 ILCS 80/1 (West 2004). Put another way, the statute of frauds prohibits oral contracts that cannot be performed within one year of their making. Martin, 109 Ill. App. 3d at 604. The test for determining whether the statute of frauds applies to a contract is whether the contract is capable of being performed within one year of its formation, not whether such occurrence is likely. Martin, 109 Ill. App. 3d at 604.

Defendant likens this case to McInerney. In McInerney, the plaintiff employee brought a breach of contract claim against the defendant employer alleging that the defendant had breached a lifetime employment agreement with the plaintiff. The defendant contended that the lifetime employment agreement violated the statute of frauds and was unenforceable because it was not capable of being performed within a year of its making. The supreme court recognized that many courts have held that a contract for lifetime employment would "be excluded from the operation of the statute because the employee could, in theory, die within one year, and thus the

contract would be 'capable of being performed.' " McInerney, 176 Ill. 2d at 490.  However, the court rejected that reasoning, stating:

> "We find such an interpretation hollow and unpersuasive.  A 'lifetime' employment contract is, in essence, a permanent employment contract.  Inherently, it anticipates a relationship of long duration-certainly longer than one year.  In the context of an employment-for-life contract, we believe that the better view is to treat the contract as one 'not to be performed within the space of one year from the making thereof.'  To hold otherwise would eviscerate the policy underlying the statute of frauds and would invite confusion, uncertainty and outright fraud.  Accordingly, we hold that a writing is required for the fair enforcement of lifetime employment." McInerney, 176 Ill. 2d at 490-91.

Though plaintiff argues that his employment contract is distinguishable from that considered in McInerney because plaintiff's contract was for employment "as long as plaintiff desired," whereas the contract in McInerney was a lifetime employment contract, we find that the McInerney reasoning applies to plaintiff's contract, bringing it into the ambit of the statute of frauds.  Under the reasoning of McInerney, like a lifetime employment contract, an employment contract for as long as the employee desires is, in essence, a permanent contract.  Indeed, there is little difference between a lifetime contract, a contract that would last until the employee retired and a contract that would last as long as the employee desired.  Despite the fact that an employee could die tomorrow, could retire tomorrow or could simply no longer desire to work for an employer tomorrow, we are bound to follow the reasoning of McInerney.  Pursuant to the

<u>McInerney</u> court's reasoning, all of those contracts contemplate a "relationship of long duration." <u>McInerney</u>, 176 Ill. 2d at 490.

Our analysis of the agreement that defendant would employ plaintiff as long as plaintiff desired parallels the federal district court's decision in <u>Razdan v. General Motors Corp.</u>, 979 F. Supp. 755 (N.D. Ill. 1997). In <u>Razdan</u>, the defendant employer moved to dismiss the plaintiff employee's complaint alleging that the defendant breached his employment contract. The plaintiff alleged that the defendant had promised to employ the plaintiff for as long as the plaintiff wished. The <u>Razdan</u> court first found that the terms of the contract were not sufficiently clear and definite to create an enforceable contract for permanent employment. Furthermore, the court held, citing <u>McInerney</u>, "oral contracts for lifetime employment violate the Statute of Frauds." <u>Razdan</u>, 979 F. Supp. at 760.

We also reject plaintiff's contention that, even if the statute of frauds applies to the agreement that defendant would employ plaintiff for as long as plaintiff desired, it is inapplicable because plaintiff partially performed under the contract.

This issue was also addressed in <u>McInerney</u>. There, the court noted, "A party's partial performance generally does not bar application of the statute of frauds, unless it would otherwise be 'impossible or impractical to place the parties in status quo or restore or compensate' the performing party for the value of his performance." <u>McInerney</u>, 176 Ill. 2d at 491, quoting <u>Mapes v. Kalva Corp.</u>, 68 Ill. App. 3d 362, 368 (1979); <u>Payne v. Mill Race Inn</u>, 152 Ill. App. 3d 269, 278 (1987). The court held that, because the plaintiff had been fully compensated for the work he performed, his partial performance did not bar application of the statute of frauds. Here,

as in <u>McInerney</u>, plaintiff was compensated for his partial performance and therefore the statute of frauds remains in effect.

Plaintiff further contends that the trial court erred in dismissing his allegation of promissory estoppel. "To plead a cause of action for promissory estoppel, plaintiff must allege that (1) defendants made an unambiguous promise to plaintiff; (2) plaintiff relied on this promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied to his detriment." <u>Jago</u>, 245 Ill. App. 3d at 880.

Concerning plaintiff's claim that defendant breached its agreements to employ plaintiff until the new department was successfully established and thereafter for as long as plaintiff desired, as stated above, plaintiff failed to sufficiently allege that defendant's promises were unambiguous offers of permanent employment. Plaintiff does not allege additional facts in his promissory estoppel claim from which such promises could be inferred.

Moreover, plaintiff's claim of breach concerning the offer of employment as long as plaintiff desired is barred by the statute of frauds. "[P]romissory estoppel does not bar the application of the statute of frauds in Illinois." <u>McInerney</u>, 176 Ill. 2d at 492. As the court pointed out in <u>McInerney</u>, some authorities have used promissory estoppel to bar application of the statute of frauds in cases in which the performing party would otherwise be without remedy and the other party would be unjustly enriched. However, as is the case here, in <u>McInerney</u>, because the plaintiff had been fully compensated for his services, promissory estoppel did not bar the statute of frauds.

For the above-stated reasons, we affirm the judgment of the trial court.

1-05-3867

Affirmed.

QUINN, P.J., and MURPHY, J., concur.