In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 07-1992

EDWARD T. JOYCE, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MORGAN STANLEY & CO., INC.,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 4754—**Samuel Der-Yeghiayan**, *Judge.*

————————

ARGUED JANUARY 25, 2008—DECIDED AUGUST 19, 2008

————————

Before BAUER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Edward T. Joyce and his fellow plaintiffs were shareholders and option holders in 21st Century Telecom Group, Inc. ("21st Century"). (We refer to them here as the Shareholders.) This case is one of many that arose when the telecommunications industry fell upon hard times around the end of the 1990s. 21st Century and a company called RCN Corporation entered into a merger agreement on December 12, 1999, under

which RCN was to acquire all of 21st Century's common shares. Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley") advised 21st Century in connection with the deal. To the Shareholders' great dismay, between the date of the merger agreement and the effective date of the merger, April 28, 2000, the market value of RCN stock plummeted. In the end, the Shareholders' newly acquired RCN stock was worthless.

The Shareholders believe that Morgan Stanley ought to compensate them for their losses. Although Morgan Stanley was acting as the financial advisor to the 21st Century corporation, they maintain that it should also have given advice to the Shareholders about how to minimize their exposure to a potential loss in value of RCN stock. Morgan Stanley did not do so, in their opinion, because implementation of the proper hedging strategies probably would have depressed the value of RCN stock—an outcome Morgan Stanley sought to avoid because it was operating under a conflict of interest caused by its prior business relationship with RCN. Morgan Stanley moved to dismiss the complaint based on the Shareholders' alleged lack of standing, their failure to state a claim, and their failure to sue within the statutory limitations period. The district court granted the motion to dismiss, and we affirm the dismissal on the merits.

## I

In its motion to dismiss, Morgan Stanley argued that the Shareholders did not have standing to sue because

their claim is derivative rather than direct. It contends that they are bringing a suit that should be brought by the corporation, and they have not gone through the proper channels to obtain authority to bring the suit in a derivative capacity. Morgan Stanley comes to this conclusion by observing that the Shareholders' damages resulted from the drop in stock price, and that type of harm is generally a direct harm to the corporation through the diminution of its assets and only an indirect harm to the Shareholders; in addition, the harm is not unique to these plaintiffs but rather is common to all shareholders.

This argument misconceives the Shareholders' claim, and to the extent that the district court relied on "standing" as a ground for dismissing the case, it erred. Whether or not the argument is compelling, the Shareholders are actually asserting that the failure to hedge, rather than the drop in stock prices, caused their losses. In other words, they think that Morgan Stanley prevented them from taking self-help measures that would have insulated their personal portfolios from the drop in value suffered by RCN. The Shareholders may not rely on the drop in stock value as the cause or measure of their damage, because (as they concede) Morgan Stanley had nothing to do with that price drop. By contrast, it is possible to see the failure to hedge as a cause-in-fact of the Shareholders' financial loss, and they have alleged that this failure was caused by a breach of an alleged duty that Morgan Stanley owed to them. Because 21st Century as a corporation did not suffer any loss related to a lack of advice about hedging (since 21st Century received no RCN stock in the transaction), the Shareholders assert

that their claim is direct rather than derivative. We are willing to go this far (but little farther) with their argument. The real issue is whether any such duty exists at all.

**II**

Turning to the merits, Morgan Stanley argues that the Shareholders have failed to state a claim. The law recognizes two types of fraud, actual and constructive. The Shareholders concede that they failed to allege actual fraud. Instead, they say that they are pleading some type of constructive fraud, and they add that this kind of claim should not be subject to the heightened pleading requirements of FED. R. CIV. P. 9(b). Unlike actual fraud, constructive fraud "requires neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrong-doer, the law declares fraudulent because of its tendency to deceive others." *Pottinger v. Pottinger*, 605 N.E.2d 1130, 1138 (Ill. App. Ct. 1992). Constructive fraud includes "any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence." *Id.* This claim requires the existence of a confidential or fiduciary relationship. Indeed, a plaintiff claiming constructive fraud "must show that defendant (1) breached the fiduciary duty he owed to plaintiff and (2) knew of the breach and accepted the fruits of the fraud." *Prodromos v. Everen Secs., Inc.*, 793 N.E.2d 151, 158 (Ill. App. Ct. 2003).

The Shareholders did assert that Morgan Stanley owed them a fiduciary duty and that there was a confidential

relationship between themselves and Morgan Stanley. They attached to their second amended complaint a fairness opinion issued by Morgan Stanley to the board of directors of 21st Century. Morgan Stanley's opinion notes that 21st Century "ha[s] asked for our opinion as to whether the Consideration to be received by the holders of shares . . . is fair from a financial point of view *to such [share]holders.*" (Emphasis added). The complaint alleges that "[a]t the time Morgan Stanley was engaged, it knew . . . that the persons to be *benefitted* by its services were the 21st Century *stockholders* . . . ."; it continued with the allegation that "Morgan Stanley knew its fairness opinion would be *relied on* by RCN's shareholders [*sic*— apparently it meant 21st Century's shareholders] in deciding to vote for the merger sale to RCN." (Emphasis added). Finally, it asserted that "[a]s a result of its engagement, Morgan Stanley owed 21st Century and The Shareholders a *duty of full and fair disclosure.*" (Emphasis added).

The Shareholders also pleaded a conflict of interest relating to the fiduciary duty that Morgan Stanley allegedly owed to them. In the engagement letter, Morgan Stanley explicitly disclosed the potential conflict of interest: "Morgan Stanley has been advising RCN Corporation ('RCN') in connection with the Transaction. RCN and 21st Century have requested that Morgan Stanley discontinue providing services to RCN and instead provide services to the Company. The Company understands that Morgan Stanley may use the same team members for this engagement." The Shareholders allege that there

was a nefarious purpose behind RCN's suggestion that Morgan Stanley advise 21st Century:

> Unbeknownst to 21st Century, the real reason why RCN wanted Morgan Stanley to be 21st Century's advisor was to ensure that RCN's interests would not be harmed by the advice given to 21st Century's shareholders. Morgan Stanley understood that this was RCN's motivation for recommending Morgan Stanley to 21st Century.

Ironically, 21st Century was eager to hire Morgan Stanley not despite but *because of* its prior relationship with RCN. The Shareholders' complaint comes perilously close to suggesting that 21st Century was simply hoping that the breach of fiduciary duty would cut the other way—that is, that Morgan Stanley would violate continuing duties of loyalty with respect to *RCN*'s confidential information by using that information for 21st Century's benefit. It says, for example, "21st Century knew that Morgan Stanley had represented RCN's interests in other significant transactions; *i.e.*, that there was a technical conflict[,]" but 21st Century nonetheless agreed to engage Morgan Stanley "[i]n the belief that Morgan Stanley was *intimately aware* of RCN's business, capital structure and other *significant information* regarding RCN . . . ." (Emphasis added).

Be that as it may, 21st Century's motivations are not relevant for our purposes. What is important is that the Shareholders alleged that Morgan Stanley breached its supposed duty to the Shareholders. The Shareholders charged that the "fairness opinion was not based on an

independent investigation by Morgan Stanley and it failed to address serious risks associated with the transaction and ways to hedge those risks."

Despite the fact that the preceding language of the complaint explicitly locates the breach in an alleged deficiency in the fairness opinion, the Shareholders have now told us (in an effort to distinguish various cases cited by Morgan Stanley) that they "are not complaining about Morgan Stanley's fairness opinion." Rather, they say, they are claiming that Morgan Stanley owed them "an *extra contractual* duty [to advise them about hedging] that arose out of the special circumstances of the relationship between Morgan Stanley and plaintiffs." (Emphasis added). The complaint, however, makes no mention of any extra-contractual duty. While the Shareholders may "point to (or even hypothesize) facts *consistent with the existing language* of the complaint[,]" they "may not amend the complaint on appeal to state a new claim . . . ." *Am. Inter-Fidelity Exch. v. Am. Re-Insurance Co.*, 17 F.3d 1018, 1022 (7th Cir. 1994) (emphasis added).

Even if we put aside this failure to put Morgan Stanley on notice of an alleged extra-contractual duty, we see no way that the Shareholders can show that their relationship with Morgan Stanley possessed the "special circumstances" necessary to give rise to an extra-contractual fiduciary duty. One such necessary "circumstance" is that the allegedly superior party must have accepted a duty to guard the interests of the dependent party. *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) ("The fact that one party trusts the other is insufficient. We

trust most people with whom we choose to do business. The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship.") (internal citations omitted).

The exhibits leave no doubt that Morgan Stanley did not accept any such responsibility, and so no fiduciary duty toward the Shareholders ever arose. The engagement letter, which defines the advising relationship, explicitly noted that Morgan Stanley was working only for the corporation: "Morgan Stanley will act under this letter agreement as an independent contractor *with duties solely to 21st Century*." (Emphasis added). "We have acted as financial advisor *to the Company* in connection with this transaction . . . ." (Emphasis added). The fairness opinion also disclaimed a duty to the Shareholders:

> It is understood that *this letter is for the information of the Board of Directors* of the Company, except that this opinion may be included in its entirety in any filing required to be made by the Company in respect of the Merger. *Morgan Stanley expresses no opinion as to the relative valuations of each of the voting and non-voting 21st Century Common Stock and the 21st Century Preferred Stock*. In addition, *this opinion does not in any manner address the prices at which the RCN Common Stock will trade* following announcement or consummation of the proposed Merger, and *Morgan Stanley expresses no opinion or recommendation as to how the holders of the 21st Century Common Stock should vote at the shareholders' meetings* held in connection with the Merger.

(Emphasis added). Thus, Morgan Stanley never owed any contractual nor extra-contractual duty to the Shareholders.

We rejected a similar claim in *HA2003 Liquidating Trust v. Credit Suisse Securities (USA) LLC,* 517 F.3d 454 (7th Cir. 2008), where we observed that investment banks' responsibilities are set by contract; the fact that someone wishes that a different contract had been written is not a basis for liability. *Id.* at 458-59.

In addition to the explicit disclaimers we have highlighted, the conflict waiver clauses reinforce the fact that Morgan Stanley did not accept a duty toward the Shareholders. It required 21st Century to waive all claims based on conflict of interest but made no mention of the Shareholders: "21st Century agrees that it will not assert any damage, conflict of interest, or other claim against us, our affiliates or such other party arising out of our relationship with RCN on the basis of a conflict of interest or otherwise." "[B]oth RCN and 21st Century have waived any potential conflict of interest."

Despite all these explicit disclaimers of a duty to anyone but 21st Century, the Shareholders argue that Morgan Stanley's unsuccessful attempt to negotiate a price protection feature into the stock-for-stock sale of 21st Century to RCN demonstrates that it had voluntarily accepted a fiduciary duty to look out for the stockholders' interests. This is not enough; we are not aware of any authority to support the proposition that an attempt to facilitate an outcome that would benefit a party automatically makes the attempter a fiduciary of that party.

**III**

Although we could affirm the district court solely on the basis of its dismissal for failure to state a claim, we note for completeness that the statute of limitations is an alternative ground on which its judgment can be upheld. The parties agree that under Illinois law the limitations period for this type of claim is five years. See 735 ILCS 5/13-205. This case was filed on August 2, 2006. Morgan Stanley argues that the Shareholders experienced (and were aware of) their injury on the effective date of the merger, April 28, 2000, by which date the stock price of RCN had fallen substantially below the price that prevailed at the time the merger was approved on December 12, 1999. The Shareholders concede the drop in price but argue that in April 2000 they were (still) not familiar with hedging strategies and consequently were unaware that their loss could have been averted. They thus claim that they did not know that they had been *wrongfully* injured until they learned, in December 2002 or later, that hedging strategies would have helped.

The standard for knowledge is an objective rather than a subjective one. "Persons have knowledge that an injury is wrongfully caused when they possess enough informa- tion about the injury to alert a reasonable person to the *need for further inquiries to determine if the cause of the injury is actionable at law*." *La Salle Nat'l Bank v. Skidmore, Owings & Merrill*, 635 N.E.2d 564, 567 (Ill. App. Ct. 1994) (emphasis added). Morgan Stanley argues, and the district court agreed, that upon experiencing the financial loss in April 2000, the Shareholders were put on notice of the need to

investigate whether they were wrongfully deprived of a means to prevent this loss. This makes sense. It might take thirty years for a stockholder who has no particular interest in learning about hedging strategies to come across this information by happenstance. The statutory period cannot depend on each individual plaintiff's diligence. In this case, it would have taken little effort for the Shareholders to discover these hedging strategies (not only after the loss but indeed beforehand) by, for example, contacting the Chicago Board of Trade ("CBOT") publications department and asking for any available CBOT literature on ways to minimize exposure to a potential decline in the price of a stock.

* * *

To the extent that the judgment of the district court was based on "standing" or, more accurately, indirect injury, we VACATE the judgment and REMAND for it to be changed to a dismissal on the merits. To the extent that the judgment reflects a dismissal for failure to state a claim and untimeliness, it is AFFIRMED.