# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2159
_____

EEE Minerals, LLC; Suzanne Vohs, as Trustee for the Vohs Family Revocable Living Trust,

*Plaintiffs - Appellants*,

v.

State of North Dakota; Board of University and School Lands of the State of North Dakota; Joseph A. Heringer, Commissioner for the Board of University and School Lands of the State of North Dakota,

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: March 16, 2023
Filed: August 30, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

EEE Minerals, LLC, and Suzanne Vohs, as Trustee for The Vohs Family Revocable Living Trust, sued the State of North Dakota, the Board of University and School Lands, and the Board's commissioner in a dispute over mineral interests in

McKenzie County, North Dakota. EEE Minerals and Vohs alleged that state law related to mineral ownership was preempted by federal law, and that the defendants had engaged in an unconstitutional taking of the plaintiffs' mineral interests. The plaintiffs sought damages, an injunction, and declaratory relief. The district court[*] dismissed the action, and we affirm.

I.

This dispute revolves around mineral interests reserved by the predecessors of EEE Minerals and Vohs in a warranty deed that conveyed surface land to the United States under the Flood Control Act of 1944. EEE Minerals and Vohs claim that North Dakota and its Lands Board have leased and claimed ownership of certain mineral interests that belong to the company and the Vohs Trust. EEE Minerals and the Vohs Trust are successors-in-interest to members of the Vohs family who entered into the warranty deed with the United States.

The Flood Control Act authorized the acquisition of land by the United States for dam and reservoir projects needed for flood control. Pub. L. No. 78-534, § 3, 58 Stat. 887, 889 (1944); 33 U.S.C. § 701c-1 (1938). This included the Garrison Dam and reservoir in North Dakota. S. Doc. No. 247, 78th Cong. 2d Sess., at 3 (1944). Closure of the Garrison Dam resulted in the reservoir now known as Lake Sakakawea. *See Sorum v. State*, 947 N.W.2d 382, 386 (N.D. 2020).

Before closing the Garrison Dam, the United States Army Corps of Engineers surveyed the area that would be inundated by the resulting reservoir. The Corps sought to determine the upland acreage that the government would need to acquire

---

[*]The Honorable Clare R. Hochhalter, United States Magistrate Judge for the District of North Dakota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

for the project.  The results of this survey were reflected in segment maps.  The Corps used those maps to acquire, by purchase or condemnation, land that now makes up the bed of Lake Sakakawea.

On July 24, 1957, the United States acquired 276.8 acres of surface property from members of the Vohs family under a warranty deed.  Under the deed, the Vohses reserved their oil and gas interests in the property, subject to the right of the United States to flood and submerge the land in the construction, operation, and maintenance of the Garrison Dam and reservoir.  EEE Minerals and the Vohs Trust have since entered into several oil and gas leases for the property.

North Dakota's ownership of mineral interests stems from title that it acquired at the time of statehood in 1889 under the equal-footing doctrine.  The State gained title to the bed of the Missouri River up to the river's ordinary high water mark.  *See Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 370-78, 376 (1977); *Shively v. Bowlby*, 152 U.S. 1, 57-58 (1894); *Sorum*, 947 N.W.2d at 396-97.  After statehood, the ordinary high water mark migrated over time through accretion and avulsion.  *See Corvallis*, 429 U.S. at 376-77; *Sorum*, 947 N.W.2d at 396-97.

In 2008, the Lands Board commissioned a "Phase 1" survey to determine the current ordinary high water mark of the Missouri River.  Another survey, "Phase 2," followed in 2010 to determine the historical ordinary high water mark as it existed before the closing of the Garrison Dam.  *Sorum*, 947 N.W.2d at 387.  Based on the results of these surveys, North Dakota leased oil and gas interests that the appellants allege are within the property described in the 1957 warranty deed that conveyed surface lands to the United States and reserved mineral interests to the Vohses.

In 2017, after disputes over the extent of the State's mineral ownership, *see Wilkinson v. Board of University & School Lands*, 903 N.W.2d 51, 54-58 (N.D.

2017), the North Dakota legislature enacted a law relating to the ownership of mineral rights of land inundated by Pick-Sloan Missouri basin project dams. N.D. Cent. Code §§ 61-33.1-01 to -07. The Act clarified that the State's mineral ownership extends "only to the historical Missouri riverbed channel up to the ordinary high water mark." *Id.* § 61-33.1-02. The historical Missouri riverbed channel is the channel "as it existed upon the closure of the Pick-Sloan Missouri basin project dams," one of which was the Garrison Dam. *Id.* § 61-33.1-01; S. Doc. No. 247, 78th Cong. 2d Sess., at 3 (1944).

The North Dakota statute identified the survey used by the Corps to acquire land for Lake Sakakawea as the presumptive historical ordinary high water mark, subject to potential modifications to conform to state law. *See* N.D. Cent. Code §§ 61-33.1-01, -03. In 2018, a modified version of the Corps' survey was adopted as the State's determination of the historical ordinary high water mark under the North Dakota statute. *See Wilkinson v. Bd. of Univ. & Sch. Lands*, 947 N.W.2d 910, 919 (N.D. 2020). EEE Minerals and Vohs complain that the North Dakota statute treats as property of the State certain mineral interests that were reserved to the Vohses in 1957.

In December 2020, EEE Minerals and Vohs sued North Dakota, the Lands Board, and the Commissioner of the Board in federal court. They claimed that the North Dakota statute was preempted by the Flood Control Act, and that the defendants had taken property from EEE Minerals and Vohs in violation of the Fifth Amendment. The plaintiffs sought damages, declarations that the North Dakota statute was preempted by federal law and that an unconstitutional taking had occurred, and an injunction prohibiting the defendants from claiming ownership of the mineral interests under state law.

The district court granted the defendants' motion to dismiss. The court concluded that state law was not preempted, that the claims for monetary

compensation against the defendants were barred by state sovereign immunity, and that no taking had occurred. EEE Minerals and Vohs appeal. For simplicity, we will refer to Suzanne Vohs in place of both appellants.

## II.

Vohs contends that the district court erred in dismissing her claim that federal law preempts the North Dakota statute. Under the Supremacy Clause of the Constitution, art. VI, cl. 2, state law is preempted when it conflicts with or frustrates federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). Preemption may be express or implied. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013). Vohs asserts that the Flood Control Act impliedly preempts the North Dakota statute, because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Vohs argues that the North Dakota statute interferes with the accomplishment of the purposes and objectives of the Flood Control Act. She focuses on the federal government's acquisition of property under the Flood Control Act through the 1957 warranty deed. Under the deed, the United States acquired 276.8 acres of surface land, but allowed the Vohses to reserve their oil and gas interests, subject to the right of the United States to flood and submerge the land in the construction, operation and maintenance of the Garrison Dam and reservoir.

Vohs contends that because the deed effectuated the acquisition of land for a project authorized by the Flood Control Act, it reflected Congress's goals and purpose. She maintains that any action by North Dakota to disturb rights under the deed or to frustrate the land acquisition is preempted by the federal statute.

Congress enacted the Flood Control Act to provide for the orderly management of the Missouri River Basin. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1019 (8th Cir. 2003); Pub. L. No. 78-534, 58 Stat. 887 (1944). The principal purposes of the Act were to avoid flooding and maintain downstream navigation. *Ubbelohde*, 330 F.3d at 1019-20. To accomplish these goals, Congress authorized the construction of dams and reservoirs on the Missouri River. Pub. L. No. 78-534, § 9, 58 Stat. 887, 891 (1944); *see ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 499-505 (1988). The Act entrusted the Corps with constructing and managing the dams and reservoirs, and prescribing regulations related thereto. *Ubbelohde*, 330 F.3d at 1019; 16 U.S.C. § 460d; 33 U.S.C. § 709.

The Flood Control Act directed the United States to acquire "title to all lands, easements, and rights-of-way necessary for any dam and reservoir project," and appropriated funds for that purpose. Pub. L. No. 78-534, § 3, 58 Stat. 887, 889 (1944); 33 U.S.C. § 701c-1. The Act did not address mineral ownership. But in making land acquisitions under the Act, the United States allowed some landowners, including the Vohses, to reserve their mineral interests. *See Sorum*, 947 N.W.2d at 397. The North Dakota statute then determined an ordinary high water mark for the riverbed channel that affected property rights in the area.

We are not convinced that the State's determination of a high water mark, and the attendant settling of property rights under state law, stands as an obstacle to accomplishing the objectives of the Flood Control Act. The Act allowed the United States to acquire from the Vohses an area of surface land that would be inundated by Lake Sakakawea. The United States permitted the Vohses to reserve their mineral interests under the surface, but neither the Flood Control Act nor the warranty deed granted the Vohses a right to be free from the application of state property law with respect to the retained interests. The interests of the United States and the goals of the Flood Control Act are unaffected by a dispute between the State and a private party over mineral rights that were not acquired by the federal government.

Vohs contends that even if the North Dakota statute did not interfere with the federal government's acquisition of land, the state law frustrates the federal government's ability to manage the Missouri River Basin. She says that the North Dakota statute is preempted because it does not acknowledge the right of the United States to flood and submerge the lands that it acquired under the warranty deed.

Vohs has not established, however, that the United States will be prevented from flooding or inundating any land covered by the 1957 deed in which the State claims ownership of mineral interests under state law. If Vohs previously enjoyed a reservation of mineral rights in any of the lands at issue, then her alleged loss of those rights does not interfere with the purposes of the Flood Control Act. And in the unlikely event that the State's asserted rights in mineral interests interfered with the objectives of the Flood Control Act by preventing inundation of a particular area, any relief based on preemption would simply limit the rights of the State. *See Sorum*, 947 N.W.2d at 397-98. The Flood Control Act would not dictate that property rights be assigned to EEE Minerals and Vohs.

## III.

Vohs next asserts that North Dakota, the Lands Board, and the Commissioner committed a taking of property without just compensation, in violation of the Fifth Amendment as incorporated against the States. She contends that when the State defined its mineral rights based on the historical ordinary high water mark, the State took mineral rights that were reserved to EEE Minerals and Vohs without providing compensation. We conclude that Vohs's claims for damages and injunctive relief are barred by the Eleventh Amendment.

The Eleventh Amendment confirms "the structural understanding that States entered the Union with their sovereign immunity intact." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). States have thus retained their traditional

-7-

immunity from suit, except as altered by the plan of the Convention or certain constitutional amendments. *Id.* Absent a waiver of state sovereign immunity or a valid abrogation of sovereign immunity by Congress, federal courts may not entertain a private party's suit against a State. *Id.* at 253-54. The same rule applies to a suit against the Lands Board and the Commissioner in his official capacity, because "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Vohs contends that the "self-executing" nature of the Fifth Amendment means that the Eleventh Amendment does not bar a takings claim against a State in federal court. Because the Fifth Amendment provides for "just compensation" as a remedy, Vohs argues that her takings claims must be allowed to proceed despite state sovereign immunity. She relies on *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which emphasized the "self-executing character" of the Takings Clause, and held that a property owner has an actionable claim in federal court against a municipality "as soon as a government takes his property for public use without paying for it." *Id.* at 2170-71 (internal quotations omitted).

The Supreme Court has not directly addressed the interplay between the Fifth Amendment and the Eleventh Amendment. But in *Reich v. Collins*, 513 U.S. 106 (1994), the Court addressed an analogous situation involving a self-executing right under the Due Process Clause. The Court explained that even though the Fourteenth Amendment provides a right to a remedy for taxes levied in violation of federal law, "the sovereign immunity States enjoy in *federal* court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum." *Id.* at 109-10. Instead, state courts were required to entertain suits against a State to recover taxes unlawfully exacted.

The same conclusion applies to a claim under the Takings Clause. There is no dispute that Vohs may bring her takings claim in North Dakota state court. *See Wilkinson v. Bd. of Univ. & Sch. Lands*, 981 N.W.2d 853, 863-66 (N.D. 2022). But the Eleventh Amendment bars a claim against the State in federal court as long as state courts remain open to entertain the action. *See 74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 & n.7 (2d Cir. 2023), *petition for cert. filed*, (U.S. May 17, 2023) (No. 22-1130); *Ladd v. Marchbanks*, 971 F.3d 574, 579-80 (6th Cir. 2020); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456-57 (5th Cir. 2019); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213-14 (10th Cir. 2019); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). *Knick* is not to the contrary, because it addressed only a claim against a municipality that has no entitlement to sovereign immunity under the Eleventh Amendment. 139 S. Ct. at 2168; *see Jinks v. Richland County*, 538 U.S. 456, 466 (2003).

Vohs briefly contends that if monetary relief is unavailable, then she is entitled to pursue equitable relief under *Ex parte Young*, 209 U.S. 123 (1908), because a suit for prospective relief is not barred by the Eleventh Amendment. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Yet Vohs simply repackages her claim for monetary relief as a request for an injunction that cures past injuries and requires the payment of just compensation. This reformulated request for retrospective relief is likewise barred by the Eleventh Amendment. *See Merritts v. Richards*, 62 F.4th 764, 771-72 (3d Cir. 2023). In any event, equitable relief is unavailable to enjoin an alleged taking of private property where, as here, a remedy at law is available through a suit for just compensation in state court. *See Knick*, 139 S. Ct. at 2176; *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 917 (8th Cir. 2001).

Vohs also maintains that money damages are available against the Commissioner in his individual capacity. Our precedent holds, however, that an official is deemed to be sued in his official capacity only, unless a plaintiff expressly and unambiguously names the defendant in his individual capacity. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Vohs did not specify that the Commissioner was sued in his individual capacity, and money damages are not available against him as an official-capacity defendant. Vohs's belated request for a remand with an opportunity to seek leave to amend the complaint to sue the Commissioner individually is rejected as untimely. *See Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1066 (1st Cir. 1991); *Scott v. Schmidt*, 773 F.2d 160, 163 (7th Cir. 1985). Any amendment likely would be futile in any event, because "Supreme Court cases only contemplate government entities—not individual government officials—providing just compensation." *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022).

The judgment of the district court is affirmed.

_____