In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1792

TINA GERLACH,

*Plaintiff-Appellant,*

*v.*

TODD ROKITA, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cv-00072 — **Tanya Walton Pratt**, *Chief Judge.*

_____

ARGUED JANUARY 25, 2024 — DECIDED MARCH 6, 2024

_____

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Tina Gerlach alleges that Indiana officials violated her right to just compensation under the Fifth Amendment's Takings Clause. She brings claims seeking declaratory and injunctive relief against and just compensation from various current and former Indiana state officers in their official and individual capacities. Because her claim for prospective relief is now moot and her claims for retrospective relief are barred by the Eleventh Amendment and unavailable

under 42 U.S.C. § 1983, we affirm the district court's dismissal.

## I. Background

### A. Factual Background

Under the Revised Indiana Unclaimed Property Act (the "Act"), Indiana takes custody of unclaimed property belonging to Indiana citizens after a specified period of dormancy. This property can include unclaimed wages, unclaimed insurance proceeds, and uncashed checks held by private and public entities such as banks and insurance companies. Ind. Code § 32-34-1.5-4. The Indiana attorney general takes possession of and deposits the unclaimed property in an account, which in turn is used to satisfy claims made by rightful owners for their property. Ind. Code §§ 32-34-1.5-14, 32-34-1.5-42. The attorney general then transfers any amount beyond what is necessary to satisfy those claims to the Indiana state treasurer, who places them in Indiana's abandoned property fund. Ind. Code § 32-34-1.5-42. At periodic intervals, the treasurer transfers any amount over $500,000 to Indiana's general fund. Ind. Code § 32-34-1.5-44(b).

In the past, Indiana did not compensate owners for interest the property earned while in state custody when satisfying claims for that property. After a previous lawsuit challenging this practice, Indiana began paying interest on reclaimed funds so long as the property also earned interest prior to Indiana taking custody. *See Cerajeski v. Zoeller*, 735 F.3d 577, 582 (7th Cir. 2013). Indiana, however, maintained its policy of not paying interest on property that did not earn interest before coming into state custody. Subsequent decisions from this court have clarified that *any* failure to pay interest on

reclaimed property, even if that property was not interest-bearing prior to state custody, violates the Fifth Amendment of the United States Constitution. *See Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017).

Pursuant to the Act, the Indiana attorney general took custody of two separate pieces of dormant property owned by Tina Gerlach. Both are valued at over $100. Gerlach reclaimed one of those pieces of property valued at $100.93, and after approving her claim, Indiana returned that property. She has not yet asserted a claim for the second piece of property. Neither piece of property earned interest prior to being in state custody, and when Indiana returned Gerlach's reclaimed property, it did not compensate her for interest accrued while in state custody.

**B. Procedural Background**

In 2022, Gerlach sued several current and former state officials in federal court, alleging violations of the Fifth Amendment Takings Clause. Count I of Gerlach's complaint seeks declaratory and injunctive relief against Indiana Attorney General Todd Rokita and Indiana Treasurer Kelly Mitchell[1] in their official capacities. Count II is a direct suit for compensation pursuant to the Fifth Amendment as applied to the states by the Fourteenth Amendment, and, like Count I, is against Rokita and Mitchell in their official capacities. Count III seeks compensatory relief under 42 U.S.C. § 1983 for alleged constitutional violations by Rokita, former acting Attorney General

---

[1] Mitchell's term in office has since ended. The current Indiana Treasurer is Daniel Elliott. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Treasurer Elliott is hereby substituted for Mitchell.

Aaron Negangard, and former Attorney General Curtis Hill, in their individual capacities.

In June 2022, Rokita, Mitchell, Negangard, and Hill ("Defendants") moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Gerlach's claim for prospective relief was moot and her claims for retrospective relief were barred by the Eleventh Amendment. In support of their assertion that Gerlach's claim for prospective relief was moot, Defendants attached an affidavit from Amy Hendrix, the Director of Indiana's Unclaimed Property Division, explaining that beginning that same month, the attorney general's policy was to pay interest on all returned property, regardless of whether it earned interest prior to recovery by the state.

The district court granted Defendants' motion for judgment on the pleadings and dismissed Gerlach's complaint with prejudice. Relying on the policy change described in Hendrix's affidavit, the district court found that Gerlach's claim for prospective relief was moot. As for her claim for just compensation against Rokita and Mitchell in their official capacities, the district court explained that the Eleventh Amendment bars any claim for compensation against state employees in their official capacities. The district court also dismissed Gerlach's claim against Rokita, Negangard, and Hill in their individual capacities for two reasons. First, it relied on *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984), to find that an individual cannot be held liable for a violation of the Takings Clause. And second, it found that the suit was really against the state because Indiana alone benefited from the unpaid interest and must pay any compensation owed.

Gerlach appealed, and while that appeal was pending, Indiana passed new legislation, effective July 1, 2023, codifying the policy described in Hendrix's affidavit. The Indiana attorney general must now pay interest on all property recovered under the Act, even if that property did not earn interest prior to Indiana taking custody. Ind. Code § 32-34-1.5-33(c).

## II. Analysis

The Takings Clause of the Fifth Amendment prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V. Gerlach's claims arise under this clause, presenting legal questions which we review de novo. *Loertscher v. Anderson*, 893 F.3d 386, 392 (7th Cir. 2018). We also review a district court's decision granting a Rule 12(c) judgment on the pleadings de novo. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

### A. Prospective Relief

In Count I, Gerlach seeks a declaration that Indiana's failure to pay interest on all property, including property not accumulating interest before being taken into state custody, violates the Takings Clause. She also requests an order enjoining the state and its officials from future violations encompassed by the declaration. The parties do not dispute that the specific relief sought in Count I is moot after legislative changes during the pendency of this appeal. Indiana now requires payment of interest on all property recovered under the Act, even if that property did not earn interest prior to Indiana taking custody of it. Ind. Code § 32-34-1.5-33(c). Consequently, there is no relief this court can award that Indiana law does not already provide. *See Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused

on a particular statute, regulation, or rule and seeks only pro-
spective relief, the case becomes moot when the government
repeals, revises, or replaces the challenged law and thereby
removes the complained-of defect.").[2]

On appeal, Gerlach suggests for the first time that Indi-
ana's method of calculating interest may nevertheless violate
the Takings Clause requirement that compensation be "just."
But any declaratory relief related to the calculation of interest
is distinct from the relief she sought in her complaint. As such,
she cannot raise this claim for the first time on appeal. *See Joyce
v. Morgan Stanley & Co., Inc.*, 538 F.3d 797, 802 (7th Cir. 2008)
(noting that a plaintiff "may not amend the complaint on ap-
peal to state a new claim" (internal quotations omitted)).

## B. Compensatory Relief Against Employees as Officers

Gerlach's claim for compensatory relief in Count II against
the attorney general and treasurer faces two obstacles. First,
because she brings this claim directly under the Fifth Amend-
ment, she must demonstrate that the Fifth Amendment Tak-
ings Clause creates an implied direct cause of action by its text
alone. *Compare Davis v. Passman*, 442 U.S. 228, 242–44 (1979)
(finding an implied direct cause of action in the text of the
Fifth Amendment Due Process Clause), *with Egbert v. Boule*,
596 U.S. 482, 491 (2022) (explaining the Court's reticence to

---

[2] The district court similarly found Gerlach's claims for prospective
relief moot, though on different grounds. Gerlach asks that we vacate that
ruling, but because the district court's decision raises no preclusion con-
cerns, we decline to do so. *See Mitchell v. Wall*, 808 F.3d 1174, 1176 (7th Cir.
2015) (explaining that vacatur is appropriate "to prevent the district
court's unreviewed decision from having a preclusive effect in subsequent
litigation between the parties").

create additional implied causes of action for constitutional
violations because, "[a]t bottom, creating a cause of action is
a legislative endeavor"). Neither we nor the Supreme Court
have ever recognized a direct cause of action for compensa-
tion under the Takings Clause. We are aware that the Supreme
Court is considering this very question in *Texas v. Devillier*,
No. 22-913 (argued Jan. 16, 2024). But even if the Court does
find a direct cause of action, the second obstacle—Eleventh
Amendment sovereign immunity—disposes of Gerlach's
claim.

Indiana enjoys "the privilege of the sovereign not to be
sued without its consent." *Driftless Area Land Conservancy v.
Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (quoting *Va. Off. for Prot.
& Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). The Eleventh
Amendment prohibits suits against a state in federal court,
whether by its own citizens or citizens of another state. U.S.
Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 662–63
(1974). That protection extends to state employees sued in
their official capacities. *See Lewis v. Clarke*, 581 U.S. 155, 162
(2017) ("In an official-capacity claim, the relief sought is only
nominally against the official and in fact is against the offi-
cial's office and thus the sovereign itself.").

States' sovereign immunity, however, is not without ex-
ception. *Ex parte Young* permits a narrow set of claims against
state officials "when a plaintiff seeks prospective relief against
an ongoing violation of federal law." *Driftless*, 16 F.4th at 520–
21 (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281
(1997)); *see also Ex parte Young*, 209 U.S. 123 (1908). As for
claims seeking a monetary judgment, only congressional ab-
rogation or waiver by the state itself can overcome a state's
sovereign immunity. *Ind. Prot. & Advoc. Servs. v. Ind. Family &*

*Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980).

Here, Gerlach seeks monetary relief for past Takings Clause violations from state-employee defendants in their official capacities. These claims are, in effect, claims against the State of Indiana itself and thus barred absent an applicable exception to Indiana's sovereign immunity. *See Lewis*, 581 U.S. at 162. Gerlach seeks retrospective relief, so *Ex parte Young* cannot help her. *See Pavlock v. Holcomb*, 35 F.4th 581, 591 (7th Cir. 2022). Nor has Indiana waived its immunity, and Congress has not abrogated it, either.

Gerlach nevertheless argues that because Indiana courts are closed to her claim for compensation, she must have recourse in federal court. We are not persuaded. Even if there is a viable exception to a state's sovereign immunity where its courts are not open to Takings Clause compensation claims— an exception this court has never recognized—Indiana courts are open to hear Gerlach's claim for just compensation.[3]

Courts recognizing this exception have made clear that the critical issue, for purposes of determining whether state

---

[3] Because Indiana courts are open to Gerlach's claims, we need not decide whether she could bring a claim *for compensation* in federal court if no state provision for compensation existed. We have noted that other circuits have held that sovereign immunity protects states "from takings claims for damages in federal court, so long as state courts remain open to those claims," implying that if state courts were closed, a federal court could force a state to pay damages. *Pavlock*, 35 F.4th at 589. But we ourselves have never held that the unavailability of a state court remedy opens the doors of the federal courthouse to not just prospective relief under *Ex parte Young* but also retrospective relief and payment of money compensation.

courts are open to Takings Clause claims, is whether state law recognizes a cause of action for a takings claim. The cases do not turn on whether a plaintiff is likely to succeed in state court. *See O'Connor v. Eubanks*, 83 F.4th 1018, 1024 (6th Cir. 2023) (concluding that a remedy is available in state court because "the Michigan Supreme Court has adjudicated takings claims against the State under the Fifth and Fourteenth Amendments," and consequently the Eleventh Amendment protects the state from suit in federal court); *EEE Minerals, LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) (explaining that a suit for injunctive relief against the state in federal court is unavailable because the state provides for compensation through the state courts); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213–14 (10th Cir. 2019) (holding that because Utah state courts address Fifth Amendment takings claims, those courts are open); *see also Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 735 (6th Cir. 2022) (concluding that because Michigan state courts do hear federal takings claims against the State of Michigan, state courts "remain open").

Under this standard, Indiana state courts are open to Gerlach's claims because the state allows for inverse condemnation and uncompensated takings claims. *See Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010) (explaining the availability of a suit for inverse condemnation and recovery of compensation); *see also State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210–11 (Ind. 2009) (explaining that the Fifth Amendment Takings Clause and a parallel provision in the Indiana Constitution are "textually indistinguishable and are to be analyzed identically," and outlining the analysis Indiana courts apply when a takings claim is brought under either);

Ind. Code § 32-24-1-16 (authorizing inverse-condemnation suits against the State of Indiana for compensation).[4]

Because Indiana state courts are open to hear Gerlach's claims and because no exception to Eleventh Amendment sovereign immunity applies, she cannot obtain compensation in federal court from the Indiana-official defendants.

## C. Compensatory Relief Against Employees as Individuals

Gerlach finally brings a § 1983 claim for compensatory relief against current and former Indiana officials Rokita, Negangard, and Hill in their individual capacities. Section 1983

---

[4] Gerlach urges us to adopt a more exacting test to determine whether Indiana state courts are open to her claims. She points to *Kolton*, in which we analyzed whether Illinois state courts were open to hear similar claims of Takings Clause violations seeking damages from state employees in their official capacities under § 1983. *See* 869 F.3d at 533, 535. But that analysis came in the context of a now-overruled Supreme Court case requiring plaintiffs to exhaust state court remedies for takings violations prior to bringing those same claims in federal court. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985), *overruled by Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019). We concluded that *Williamson County*'s exhaustion rule did not apply "when state law unequivocally denies compensation," as Illinois statutory law and an Illinois Supreme Court ruling did, even though Illinois provided a cause of action for takings more generally. *Kolton*, 869 F.3d at 535.

As *Kolton* itself makes clear, this (now defunct) rule of exhaustion was a separate question from whether a plaintiff could overcome sovereign immunity when suing a state. There, we explained that the exhaustion requirement in *Williamson County* did not disturb the immunity enjoyed by states and state officials. *Id.* at 535–36. Consequently, we decline to adopt *Kolton*'s exhaustion test for whether state courts are open for purposes of sovereign immunity, although we again note that it is unsettled whether lack of recourse in state courts could overcome sovereign immunity to permit a federal court to force a state to pay compensation.

makes a "person" liable for statutory and constitutional violations committed "under color" of state law. But even though Gerlach names individual current and former state employees, we are "obliged to consider whether [this claim] may really and substantially be against the state." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001) (citing *Coeur d'Alene Tribe*, 521 U.S. at 270); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (noting that even when a suit is nominally against individual state employees, "a question arises as to whether the suit is a suit against the State itself"). A plaintiff cannot circumvent the sovereign immunity enjoyed by states and their employees in their official capacities simply by pleading a cause of action against those same employees as individuals.

Where "the judgment sought would expend itself on the public treasury or domain," the suit is against the sovereign, not the individual. *Pennhurst*, 465 U.S. at 101 n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)); *see also Haynes v. Indiana Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) (explaining that a suit is really against the state when "[t]he money will flow from the state treasury to the plaintiff[]" (quoting *Luder*, 253 F.3d at 1024)). Even if the sought after compensation would not definitively be paid out of the state treasury, if the amount the plaintiff seeks "should have been paid by the State," the suit is likely one against the state itself. *See Lenea v. Lane*, 882 F.2d 1171, 1172, 1178 (7th Cir. 1989) (quoting *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985)).

Any compensation Gerlach seeks correlates directly to the interest her property earned while in state custody—interest

that flowed to the state, not individual state employees.[5] The money Gerlach seeks is in the state coffers, not the personal bank accounts of Indiana's current and former attorneys general. Targeting individual state employees for those funds does not change the fact that the amount she claims she is owed should have been paid by the state. *See Lenea*, 882 F.2d at 1178. Because the State of Indiana benefited from retaining interest earned on Gerlach's property, we conclude that Gerlach's suit for compensatory relief is actually against the State of Indiana. *See Kolton*, 869 F.3d at 536.

Since Gerlach's claim for compensatory relief is against the state, her claim is doubly barred—first because § 1983 does not create a cause of action against a state and second because Indiana enjoys sovereign immunity under the Eleventh Amendment. *Id.* at 535; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Finding that Gerlach's claim is really against the state, we need not resolve whether an individual can be held liable for a Fifth Amendment takings violation. Accordingly, the district court correctly dismissed her claim for compensation under § 1983.

### III. Conclusion

For these reasons, we AFFIRM the district court's dismissal of Gerlach's claims.

---

[5] At oral argument, Gerlach's counsel admitted that "the damages would obviously be tied … nearly one hundred percent to the underlying just compensation calculation," and conceded that she could not win double recovery. In other words, if Gerlach could recover compensation from the state under Count II, then she would be barred from recovery under Count III. This supports that Count III is "really and substantially … against the state." *See Luder*, 253 F.3d at 1023.